UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:                                            Chapter 11
                                                  Case No. 24-43449-jmm
2281 CHURCH AVENUE LLC,                           (Subchapter V)


                    Debtor.
-----------------------------------------------------------------X

**OBJECTION TO CONFIRMATION DEBTOR'S FIRST AMENDED CHAPTER V PLAN OF REORGANIZATION**

Tralon Ellis ("Ellis") and Calvin Cross ("Cross" and together with Ellis, the "Judgment Creditors") secured creditors in the above-referenced case submit this objection ("Objection") to the Plan of Reorganization of 2281 Church Avenue LLC. ("Debtor") and respectfully states and alleges as follows:

## INTRODUCTION

Prior to the Petition Date, Secured Creditors obtained a judgment "the "Judgment") against Debtor and others (including the Debtor's sole shareholder Oswald Davis ("Davis")) for injuries sustained at the 2281 Church Avenue, Brooklyn, NY 11226 ("2281 Church Ave."). After the Judgment was entered, the Debtor filed an Order to Show Cause seeking a TRO in the State Court to stay the enforcement of the Judgment. The State Court denied the TRO such that enforcement of the Judgment could continue. Thereafter, the Debtor filed an appeal (the "Appeal") seeking to vacate the Judgment. The Debtor neither obtained a stay pending appeal nor provided an undertaking to stay enforcement of the Judgment. Rather, the Debtor filed this bankruptcy case to stay enforcement of the Judgment and has proposed a plan providing for to make no payments to

the Judgment Creditors and a 100% distribution to all other Allowed Claims. Instead of paying Judgment Creditors' Claims, the Debtor proposes to create a "Disputed Claims" reserve, where it will set aside $3,000 in quarterly installments while the appeal is pending. The Debtor provides no basis for such treatment except that it asserts the claim is "disputed" because an appeal is pending.[1] Such treatment is impermissible under the Bankruptcy Code, and the Plan cannot be confirmed. There is no basis to assert the Judgment is "disputed," and even so, the *de minimis* funds placed in reserve are inadequate to pay the Judgment in full over the life of the Plan. In addition, the Debtor filed this case after having the 1232 East 69th Street, Brooklyn, NY ("1232 East 69th Street") improperly conveyed to it, allowing the Debtor to skirt the requirements of a single asset real estate case.

Given the foregoing, the Plan should not be confirmed as filed.

## BACKGROUND

1. On April 26, 2022, the Judgment was entered in the Kings County Supreme Court between Ellis and Cross as Plaintiffs and inter alia 2281 Church Ave. and Oswald thereby becoming a lien on the Debtor's real property. The Judgment awards damages to Cross in the amount of $430,500. And Ellis in the amount of $269,062.50 plus costs and disbursements of $1,710.50 with interest from April 26, 2022. As of the Petition Date the total amount due under the Judgment was $860, 060.48. A copy of the Judgment is annexed hereto as Exhibit "A".

2. On August 19, 2024 (the "Petition Date"), the Debtor filed this Chapter 11 case under Subchapter V of the Bankruptcy Code.

---

[1] Debtor's assertion that Judgment Creditors' Claims are "disputed" for bankruptcy purposes is incorrect as a matter of law.

2

3.      On November 12, 2024, Cross timely filed Claim No. 4-1 as a secured claim in the amount of $529,267.99 and on that same day Ellis filed Claim No. 5-1 as a secured claim in the amount of $330,792.49. Those claims have not been objected to by the Debtor.

4.      On January 17, 2025, the Debtor filed its First Amended Subchapter V Plan of Reorganization (the "Plan").

5.      The Plan consists of 7 Classes of claims, including equity interests. The Plan separately classifies the secured claims. Each secured creditor, other than Cross and Ellis are to be paid 100% of their claim (one with interest) over the life of the Plan. The unsecured class of creditors (consisting of a total of $20,485.10) is also to be paid 100% of their claims over the life of the Plan.[2]

**6.**     In stark contrast, the Judgment of Ellis and Cross will be treated as a "disputed" claim and will receive no distribution under the Plan. Rather, the Debtor will create a Disputed Claim reserve where it will place $12,000 per year, for a total of $60,000 over the life of the Plan (the "Disputed Claim Plan Payments) and a lump sum payment if, the Debtor should lose the Appeal and/or a subsequent trial on the merits. Although interest continues to accrue at 9%, the Debtor does not include an interest component to the Disputed Claim Plan Payments. As a result, at the end of the Plan, the debt of Cross and Ellis will have increased by $255,592.95.

## ARGUMENT

i.      **The Bankruptcy is an Impermissible Attempt to Stay Enforcement of the Judgment Without Having Obtained a Stay Pending Appeal or Posting a Supersedeas Bond and the Plan is Not Proposed in Good Faith**

7.      The Debtor tried, and failed, to obtain a stay or other injunctive relief in State Court of the Judgment Creditors' attempts to enforce the Judgment. When enforcement by the Sheriff

---

[2] Given the substantial equity in the properties, it would appear that the unsecured creditor should also be entitled to interest under the Plan.

was close at hand, the Debtor filed for bankruptcy protection. It is quite clear that the Debtor's sole intention was to use this bankruptcy as a litigation tactic to stay enforcement of the Judgment while it prosecutes its appeal. This is an impermissible use of the bankruptcy process. *In re Bridge to Life, Inc.*, 330 B.R. 351, 356-57 (Bankr. E.D.N.Y. 2005) ("A Chapter 11 filing may not be used as a litigation tactic to avoid the posting of a supersedeas bond. *See e.g., In re A.Z. Services, Inc.,* 208 B.R. 578, 580-81 (Bankr. S.D. Fla. 1997); *In re Edwards,* 140 B.R. 515, 519 (Bankr. W.D. Mo. 1992); *In re Smith,* 58 B.R. 448, 451 (Bankr. W.D. Ky. 1986); *In re Karum Group, Inc.,* 66 B.R. 436, 438 (Bankr. W.D. Wash. 1986); *In re Wally Findlay Galleries (New York), Inc.,* 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984)."). As such, the Plan has not been offered in good faith and indeed, this bankruptcy was not filed in good faith, requiring dismissal of this case. *In re Bridge to Life, Inc.*, 330 B.R. 351, 356 (Bankr. E.D.N.Y. 2005) ("The proposition that a debtor's lack of good faith in filing and maintaining a Chapter 11 case constitutes cause to dismiss the petition is well established. *See e.g., In re SGL Carbon Corp.,* 200 F.3d 154, 160 (3rd Cir. 1999); *C-TC 9th Avenue Partnership v. Norton Co. (In re C-TC 9th Avenue Partnership),* 113 F.3d 1304, 1310 (2nd Cir. 1997)").

8. It is also apparent that this bankruptcy is essentially a "two-party" dispute wherein the Debtor sought the bankruptcy protection solely to act as a stay pending appeal having been unable, or unwilling, to obtain one in State Court. A review of the Plan supports this conclusion. Class 1, is the Secured Claim of Flushing Bank. The Plan provides for the Debtor to cure a small amount of arrears, representing approximately two months of mortgage payments, and legal fees which accrued post-petition. Class 2 is the Secured Claim of US Bank to whom the Debtor was current as of the Petition Date and therefore no plan payments are necessary. Class 3 is the Secured Claim of NYC Water Board, which merely adopts the pre-petition payment arrangement already

entered into between the Debtor and that Creditor. Like Class 3, Class 4 merely adopts the pre-petition arrangement between the Debtor and National Grid and provides that the Debtor will continue to make those payments.[3] Class 5 consists of the "disputed" claims of Ellis and Cook to which no payments are being made. Class 6 consists of the general unsecured creditors and is comprised of four small credit card claims totaling $20,485.10. It is unclear if the Debtor was in arrears on these obligations when the case was filed, but these creditors will receive a 100% distribution on their claims.

9. In light of the foregoing, the Plan has not been filed in good and is being used for an impermissible purpose. As such, the Plan should not be confirmed.

### ii. The Plan Impermissibly Treats the Judgment Creditors' Claims as "Disputed" and Fails to Pay Judgment Creditors' Claims in Full

10. While paying the other classes of creditors claims in full over the life of the Plan, the Debtor proposes to treat Judgment Creditors' Claims as disputed and thereby propose a plan that pays nothing to the Judgment Creditors and only sets aside a *de minimis* quarterly payments insufficient even to offset the accruing interest. Such treatment is not permitted by under the Bankruptcy Code.

11. "Chapter 11 plans must propose to pay each secured claim in full in order to be confirmed over the secured claimant's objections. 11 U.S.C. § 1129(b)(2)(A)(i)(II). " *Airadigm Communications, Inc. v. F.C.C.*, 372 B.R. 894, 907 (Bankr. W.D. Wis. 2006). If a secured creditor objects to the treatment of its claim under the Plan, a Debtor may nonetheless confirm a plan if it "does not discriminate unfairly, and is far and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. §1129(b). In order to

---

[3] It is unclear how the Debtor can justify separately classifying and treating this unsecured claim from the other unsecured claims in this case.

be "fair and equitable" the Judgment Creditors would have to receive "payments totaling at least the allowed amount of [its claim] as of the effective date of the plan." *See* § 1129(b)(2)(A)(ii); *In re Attack Properties, LLC*, 478 B.R. 337, 343 (N.D. Ill. 2012). Here, the Plan does not even attempt to meet these requirements. The total set aside under the Plan is a mere $60,000 and the fact that the Debtor intends to sell one of its properties to satisfy the judgment does not change this analysis since (i) the sale, and subsequent payment is contingent on the outcome of the appeal and the state court litigation; and (ii) no timeframe is provided for payment of the Judgment Creditors' Claims, which means payment to these creditors could occur long after the five-year plan period ended, if at all.

12. The Debtor simply cannot avoid paying a lawful judgment of a court of competent jurisdiction simply by proposing payments in the event it is unsuccessful with its appeal. Since there is no stay of enforcement of the Judgment, the Plan must provide for its payment.

13. Nor can the Debtor escape this conclusion simply by claiming the claims of Cross and Ellis are "disputed". While the Debtor may dispute the determination of the state court, that does not make the Judgment Creditors' Claims disputed for bankruptcy purposes. *In re Barbel*, 257 F. Supp. 3d 727, 731 (D.V.I. 2010) ("A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law." *United States v. Verdunn* , 89 F.3d 799, 802 (11th Cir. 1996). A final money judgment is a liquidated debt. *Shook & Fletcher Insulation Co. v. Central Rigging & Contracting Corp.* , 684 F.2d 1383, 1387 (11th Cir. 1982) (finding that a tort claim was liquidated when the court entered judgment). Indeed, even if an appeal is pending, bankruptcy courts are bound by the doctrine of claim preclusion to recognize a final state court judgment as a liquidated, undisputed debt. *In re Letterese* , 397 B.R. 507 (Bankr.

S.D. Fla. 2008) (where debtor challenged two state court judgments, the court held that "they nonetheless count toward the statutory maximum").

14. This also raises feasibility issues. The Debtor's Plan does not provide for payment in full of the Judgment Creditors' Claims. Therefore, its projections are inaccurate insofar as they show sufficient income to fund a confirmable plan. To pay the Judgment over the life of the Plan, the Debtor would be required to make quarterly payments of $53,560.32 over the life of the Plan. The Debtor's projection establishes that this is clearly impossible. As such, the Plan is unconfirmable.

### iii. 1232 East 69th Street Was Improperly Transferred to the Debtor in Order to Make the Debtor Eligible for Subchapter V.

15. After entry of the Judgment, on August 1, 2022, Oswald was served with an Information Subpoena and Restaining Notice. *See* Information Subpoena and Restraining Notice annexed hereto as Exhibit "B". Therefore, pursuant to CPLR §5222(b), Oswald was "forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest…" except for limited exceptions not applicable here. Nevertheless, on July 18, 2024, **one month prior** to this bankruptcy being filed, Oswald conveyed 1232 East 69th Street to 2281 Church Avenue, LLC for no consideration. *See* Copy of Deed annexed hereto as Exhibit "C". What could have been the purpose of this transfer? Typically, judgment creditors transfer assets out of their name in order to avoid enforcement of the judgment against that property. Here, however, Oswald transferred the Property from one judgment debtor (himself) to another judgment debtor (the Debtor). There can be only one reason for this curious behavior: to allow the Debtor to file bankruptcy under Subchapter V instead of as a single asset real estate case, since a single-asset real estate entity cannot file for Subchapter V relief. The simplified process and ability to

confirm a plan without the consent of classes of claims makes Subchapter V easier for the Debtor to confirm a plan over the Judgment Creditors' objection than does a single asset real estate Chapter 11.

16. Again, it appears from the inception of this case, and even before its filing, the Debtor acted in bad faith to manipulate the bankruptcy process to gain an unfair advantage over the Judgment Creditors and unfairly prohibit them from enforcing the Judgment.

## **CONCLUSION**

Based on the foregoing, the Plan should not be confirmed.

**WHEREFORE,** Judgment Creditors respectfully requests this Court deny confirmation of the Debtor's Plan, along with such other and further relief as this Court deems just and proper.

Dated: Melville, New York
February 19, 2025

GIULIANO LAW, PC
*Attorneys for Judgment Creditors*
445 Broadhollow Rd. Ste. 25
Melville, New York, 11747
Tel: (516) 792-9800
Anthony F. Giuliano, Esq.
afg@glpcny.com

By: */s/  Anthony F. Giuliano*
  Anthony F. Giuliano, Esq.