UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

                                                      Chapter 11

2281 CHURCH AVENUE LLC,            Case No. 24-43449-jmm

                 Debtor.
---------------------------------------------------------X

**DEBTOR'S REPLY TO OBJECTION TO CONFIRMATION
TO DEBTOR'S FIRST AMENDED CHAPTER V PLAN OF
<u>REORGANIZATION BY TRALON ELLIS AND CALVIN CROSS</u>**

TO:     THE HONORABLE JIL MAZER-MARINO
         UNITED STATES BANKRUPTCY JUDGE:

        2281 Church Avenue LLC, the debtor and debtor-in-possession herein ("Debtor"), by its attorney, Kamini Fox, PLLC, hereby submits this Reply ("Reply") to the *Objection to Confirmation Debtor's First Amended Chapter V Plan of Reorganization* filed by Tralon Ellis and Calvin Cross ("Judgment Creditors") on February 19, 2025 ("Objection") [ECF No. 62], and respectfully represents as follows:

        **i.   <u>Debtor Not Required to Post a Supersedeas Bond Pending Appeal</u>**

        1.     It is respectfully submitted that as a result of the automatic stay provisions of 11 U.S.C. § 362(a) of the instant Chapter 11 Case, which stays any execution of a judgment and specifically the Default Judgment herein, the Debtor is not required to post a supersedeas bond.

        2.     The Judgment Creditors commenced a lawsuit on August 14, 2028, captioned *Calvin Cross et al. v. Woodbine Caterers et al.*, in the Kings County Supreme Court bearing index number 516493/2018 (the "Cross Action"), which contained causes of action against the defendants ("Defendants") sounding in negligence and violations of the Dram Shop Act.

1

3. On or about August 23, 2018, counsel for Judgment Creditors individually served copies of the Summons and Complaint against Woodbine Caterers ("Woodbine") and Oswald C. David ("David").

4. On October 8, 2018, the Judgment Creditors filed an Amended Complaint, adding the Debtor to the Cross Action.

5. On or about December 10, 2018, the defendants in the Cross Action, through their attorney, Louis Klieger, Esq. ("Klieger"), filed and served answers in the Cross Action.

6. On December 9, 2019, the Judgment Creditors filed a Second Amended Complaint. The Defendants' last day to file responsive pleading to the Second Amended Complaint was January 9, 2020.

7. On February 10, 2020, the Judgment Creditors moved for the entry of a default judgment against the Defendants, which included the Debtor ("Motion for Default Judgment").

8. On February 10, 2020, a compliance conference was held, and a default judgment was entered against the Defendants in the Cross Action for their failure to appear.

9. On April 26, 2022, judgment was entered against the Defendants in the Cross Action in the total collective amount of $701,273, inclusive of costs and interest from June 21, 2021 thereon ("Default Judgment").

10. Thereafter, on May 22, 2024, the Defendants in the Cross Action filed a Notice of Appeal to the Appellate Division of the Supreme Court of the State of New York, approximately three (3) months before the commencement of the instant Chapter 11 bankruptcy case ("Chapter 11 Case") on August 19, 2025 ("Filing Date").

11. Further, this Chapter 11 Case was not filed in bad faith as the Debtor has every intention to pay the Judgment Creditors' Default Judgment after their claims are litigated upon the merits.

12. The *In re Bridge to Life, Inc.*, 330 B.R. 351, 356-57 (Bankr. E.D.N.Y. 2005) case cited in support of the Judgment Creditors' argument is distinguishable from the instant Chapter 11 Case. In *In re Bridge to Life, Inc.*, the debtor filed two (2) chapter 11 cases, the first of which was dismissed with prejudice with a bar to refiling. Despite the bar to refiling, the Debtor nonetheless refiled a second chapter 11 case which was dismissed *sua sponte* by the court. *Id.* at 352. The Debtor then filed a motion to "reinstate" the refiled dismissed bankruptcy case or in the alternative to stay the appeal. *Id.* at 352. The court dismissed the debtor's motion to reinstate the dismissed refiled bankruptcy and held that it was in violation of the Court's prior order and a misuse of the chapter 11 process. *Id.* at 352. The Court further held that there was "no question" that the debtor's first chapter 11 bankruptcy was purely strategic to obtain an "advantage in a two-party dispute" and was not based upon a legitimate intention to reorganize. *Id.* at 356.

13. It is respectfully submitted that the facts of the *In re Bridge to Life, Inc.* case is based upon different facts than that which is present in the instant Chapter 11 Case. Here, this is the Debtor's first chapter 11 case. The Debtor has a legitimate intent to reorganize its affairs and has proposed a plan in good faith which sets out a framework to pay the Judgment Creditors' Default Judgment as well as to pay its other creditors.

14. As this Court is aware, the Judgment Creditors obtained a judgment upon default due to the lack of proper representation of the Debtor by its state court counsel, Louis Klieger, Esq. The instant Chapter 11 Case provides the Debtor with the opportunity to have a fair opportunity to present its case and have the claims in the Cross Action litigated upon the merits.

Should the Judgment Creditors win their case on the merits, then their claim will be paid in full as contemplated by the Debtor's Plan.

15. Contrary to the Judgment Creditors' argument in their Objection, the Cross Action is not a "two-party" dispute. The caption speaks for itself as it includes four (4) defendants: (a) Woodbine Caterers d/b/a Woodbine Ballroom, (b) David Oswald, (c) 2281 Church Ave LLC, and (d) Bad Dog Security, LLC. (*See* Ex. A to Objection).

16. Based upon the foregoing, it is respectfully submitted that the Debtor is not required to post a supersedeas bond and the instant Chapter 11 case was not filed in bad faith.

### ii. Plan Properly Treats Judgment Creditors' Claim as "Disputed" Pending Outcome of Appeal

17. It is important to note that the Judgment Creditors' claim is a lien against the Debtor's Church Avenue Property which continues to accrue interest at a rate of 9% rate and will be paid in full through the Plan should they win the Cross Action on the merits. The Judgment Creditors' *pro rata* distribution under the Plan will be set aside in a disputed reserve fund simply because if the Debtor wins the Cross Action, then the Judgment Creditors will not be entitled to any distribution and to recoup funds already distributed to the Judgment Creditors will be difficult.

18. As stated in the Debtor's Plan and the Oswald C. David's *Declaration in Support of Confirmation Debtor's First Amended Subchapter V Plan of Reorganization* ("Oswald Declaration") [ECF No. 64], the Judgment Creditors' claims are subject to an appeal in which the Debtor is seeking to vacate their judgment in its entirety. Any distribution to the Judgment Creditors must await a resolution of the appeal and/or a resolution of any subsequent trial on the merits of the Cross Action.

19. Pursuant to the Oswald Declaration [¶ 47], the Debtor will increase its quarterly payments to the Judgment Creditors' disputed reserve fund from $3,000 to $13,625, with a lumpsum payment to satisfy the claims in full upon the sale of the Debtor's 2281 Church Avenue Property should the Debtor lose the appeal and/or subsequent trial on the merits of the Cross Action.

20. Should the Debtor be successful in the appellate court and successful in a subsequent trial on the merits of the Cross Action, the Debtor will be under no obligation to make any payments to the Judgment Creditors and the sums set aside to pay them will be distributed to Allowed Claims pursuant to the Bankruptcy Code.

21. Should the appeal remain ongoing at the time of closing on the sale of the Church Avenue Property, the net sale proceeds in an amount necessary to satisfy the Judgment Creditors' claims in full including a 9% interest, shall be held in escrow by Debtor's counsel pending a resolution of the appeal or any subsequent State Court decision with respect to the Cross Action.

22. Since the filing of the Plan on January 17, 2025, the Debtor, along with the other Defendants in the Cross Action, have commenced a legal malpractice action on February 19, 2025, against Klieger for indemnification with respect to all damages incurred relating to the Cross Action. Any amounts recovered from this legal malpractice action will also be used to pay the Judgment Creditors' claim.

23. As stated in the Oswald Declaration, despite the Judgment Creditors' rejection of the Plan, Section 1191(b) allows this Court to confirm the Plan where all requirements of Section 1129(a), other than Sections 1129(a)(8), (a)(10), (a)(15), are met, and where the Court finds that the plan "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims" that is impaired and has not accepted the plan.

24. Section 1191(c) defines what it means for a Subchapter V plan to be fair and equitable and provides, in relevant part, that a plan is "fair and equitable" within the meaning of Section 1191(b) when, as of the effective date of the plan, "the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor." *See* 11 U.S.C. §1191(c)(2)(B).

25. Since the Plan has been rejected by the Judgment Creditors and the other impaired Class 5 claimant did not affirmatively vote on the Plan, it is non-consensual. In order for the Court to confirm the Debtor's Plan, it must comply with the cramdown provisions of § 1191(b) of the Bankruptcy Code. As set forth in detail in the Oswald Declaration, it is respectfully submitted that the Plan satisfies each and every one of these requirements. *See* Oswald Declaration ECF No. 64 ¶s 34-53.

### iii. The Effects of the Bankruptcy Filing on the Cross Action is the Same Whether a Single Asset Real Estate or a Regular Chapter 11 Case

26. Whether this bankruptcy case was commenced as a single asset real estate or a subchapter V case, the effects on the Cross Action would have been the same and the enforcement of the Default Judgment would have been stayed under Section 362(a) of the Bankruptcy Code.

27. The Debtor would have still been allowed to treat the Judgment Creditors' claim as "disputed" and the Judgment Creditors would have retained the same rights to object to the Plan as they have done in the instant case.

28. The only effect on the Judgment Creditors is that they have to wait a little longer to be paid.

29. It is respectfully submitted therefore that a transfer of the 1232 E. 69th Street property from one judgment debtor, Oswald C. David, to another judgment debtor, the Debtor herein, did not irreparable harm the Judgment Creditors.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an Order confirming the Debtor's First Amended Subchapter V Plan dated January 17, 2025 over the objection of the Judgment Creditors, and grant such other relief as this Court deems appropriate under the circumstances.

Dated: Garden City, New York  
       February 26, 2025

KAMINI FOX, PLLC

By:   */s/ Kamini Fox*  
Kamini Fox  
825 East Gate Blvd., Suite 308  
Garden City, New York 11530  
Phone: (516) 493-9920  
kamini@kfoxlaw.com

*Counsel to the Debtor and Debtor in Possession*