UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

2281 CHURCH AVENUE LLC,

                          Debtor.
--------------------------------------------------------X

Chapter 11
Case No. 24-43449-jmm
(Subchapter V)

---

## SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION
## OF 2281 CHURCH AVENUE LLC

---

**KAMINI FOX, PLLC**
*Attorney for the Debtor*
*and Debtor in Possession*
825 East Gate Blvd., Suite 308
Garden City, New York 11530
Office Phone: (516) 493-9920
Direct Dial: (516) 528-6344
Fax: (516) 255-6905

By:   Kamini Fox, Esq.
      kamini@kfoxlaw.com

**EXHIBITS**

This Plan contains the following Exhibits:

| | |
|---|---|
| **Exhibit A** | Liquidation Analysis |
| **Exhibit B** | 5 Year Financial Projections |

## INTRODUCTION

2281 Church Avenue LLC, the debtor and debtor in possession, proposes the following Plan of Reorganization ("Plan") for the resolution of the Claims against the Debtor and its estate.

In accordance with § 1190 of the Bankruptcy Code, this Plan includes:
> (a) a brief history of the business operations of the Debtor,
> (b) a liquidation analysis, and
> (c) projections with respect to the ability of the Debtor to make payments under this Plan.

This Plan further includes a discussion of certain risk factors and certain related matters including, among other things, certain tax consequences. Subject to certain restrictions and requirements set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

This Plan is a contract between the Debtor and all of its creditor constituencies. It provides the mechanism, timing, and details of all treatment and payment of creditor claims. The primary purpose of the Plan is to make a pro rata distribution to Allowed Claims and continue to operate as a going concern business. The information contained in this document is designed to provide creditors and interest holders of the Debtor with information to enable them to make an informed judgment concerning the method by which the Debtor will fund this Plan. If the Bankruptcy Court confirms the Plan, it will be binding on the Debtor, its creditors, and other interested parties.

Under this Plan, the Debtor proposes to use all projected disposable income as defined by § 1191(d) of the Bankruptcy Code for the period of five (5) years in accordance with the terms prescribed in § 1191(c)(2) of the Bankruptcy Code which disposable income is projected as approximately $332,605.20 as evidenced by the projected financial information contained in Exhibit B annexed hereto, which will be used to: (i) pay Allowed Priority Tax Claims pursuant to the extent permitted in § 507(a)(8) of the Bankruptcy Code, and (ii) make distributions to each of its Allowed General Unsecured Creditors (except for the Cross Ellis Judgment which is the subject of an appeal) an anticipated *pro rata* distribution of approximately 100%. The Debtor will use all funds in its DIP Account on the Effective Date to: (i) pay all Allowed Administrative Claims in full, and (ii) pay all Professional Fee Claims in full. It is anticipated that there will be insufficient funds in the Debtor's DIP Account on the Effective Date to pay all Allowed Administrative Claims and Professional Fee Claims in full. As such, the Debtor's Principal will contribute his own funds

in the total amount of the difference necessary to pay all Allowed Administrative Claims and Professional Fee Claims in full on the Effective Date of the Plan, which will also allow for an increased distribution to Allowed General Unsecured Claims.

As of the date of this Second Amended Plan, Debtor's counsel is holding $25,000 in its attorney escrow account representing funds received from Debtor's principal which will be used to fund the payment of Allowed Administrative Claims and Professional Fee Claims.

The Debtor believes this Plan satisfies one of the goals of Chapter 11, which is to enable the Debtor to preserve its value as a going concern while it seeks to reorganize its affairs to maximize value to its Creditors. The Debtor submits that this Plan will accomplish these goals and that Confirmation of the Plan will provide the best possible return to Creditors and is in the best interests of the Debtor, its Creditors, and equity holders.

The Debtor submits that this Plan as proposed is the fairest and best possible method for all creditors and will give the estate and its creditors the opportunity to achieve the greatest distribution. The other alternative to this Plan for the existing creditors is conversion of this case and sale in a Chapter 7 proceeding, which is anticipated to yield a 100% distribution to creditors as evidenced by the Liquidation Analysis annexed hereto as Exhibit A as the Debtor owns real properties with significant equity. The Debtor submits that this alternative is not better than this Plan, as the Plan allows the Debtor to continue its business as a going concern and retain its Real Properties while still making a 100% distribution to its creditors.  In addition, if this case is converted to a Chapter 7, it will take longer for creditors to receive any distribution as a chapter 7 trustee will need to administer the assets of the estate and then have an auction of the Real Properties which will most likely yield significantly less than if the Real Properties were sold in due course.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.

**ACCORDINGLY, THE DEBTOR STRONGLY URGES YOU TO VOTE IN FAVOR OF THIS PLAN.**

## THE PLAN CONFIRMATION HEARING

Pursuant to § 1128 of the Bankruptcy Code, a Confirmation Hearing will be held **on April 2, 2025 at 10:30 a.m. ET**. The Bankruptcy Court may adjourn the Confirmation Hearing from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection, and the amount of the claim held by the objecting party. Any objection must be filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court, the U.S. Trustee, the Subchapter V Trustee, and

Counsel for the Debtor on or before **April 1, 2025**. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Failure by a Claimant to timely file an objection to the Plan or timely cast a ballot in accordance with the Plan Scheduling Order shall constitute an agreement by silence to accept the terms contained in this Plan.

Any interested party desiring further information about the Plan should contact Debtor's Counsel.

# ARTICLE I.

# BACKGROUND

## A.     Description and History of the Debtor's Business

The Debtor is a New York corporation, which maintains its principal place of business at 2281 Church Avenue, Brooklyn, New York 11226 ("Property"). The Debtor's books, records and management are located at the Property.

Oswald David is the president and sole shareholder of the Debtor and Debbie Harris is the operating manager. Together, they make all the major decisions for the Debtor.

The Debtor is a real estate holding company and currently owns the following two (2) real properties:

> a.     2281 Church Avenue, Brooklyn, New York 11226 ("2281 Church Avenue"); and,
>
> b.     1232 East 69th Street, Brooklyn, New York 11234 ("1232 E. 69th Street").

2281 Church Avenue

The 2281 Church Avenue property consists of eight (8) stores/units, seven of which are located on the ground floor and a catering hall rented by Woodbine Caterers d/b/a Woodbine Ballroom ("Woodbine Caterers") which occupies the entire second floor, as follows:

| Tenant | Monthly Rent |
|--------|-------------|
| Four Season | $3,500.00 |
| Grocery | $4,250.00 |
| Real estate | $2,800.00 |

| | |
|---|---|
| Beauty Salon | $2,500.00 |
| Barber Shop | $2,220.00 |
| Printery | $1,800.00 |
| Restaurant | $4,500.00 |
| Woodbine Catering | $8,400.00 |
| **TOTAL:** | **$32,520.00** |

<u>1232 E. 69th Street</u>

The 1232 E. 69th Street property consists of five (5) units located on three (3) separate floors and includes one rear apartment and a studio as follows:

| Tenant | Monthly Rent |
|---|---|
| Apartment 1st Floor | $1,250.00 |
| Apartment 2nd Floor | $2,300.00 |
| Apartment 3rd Floor | $2,000.00 |
| Apartment 2R | $1,300.00 |
| Apartment 3R | $1,400.00 |
| **TOTAL:** | **$9,075.00** |

The Debtor's total projected gross monthly income for both properties is $41,625.00, with a projected net monthly income of $5,543.42 after payment of monthly expenses.

Currently, the Debtor employs one (1) individual who is being paid on a weekly basis as a 1099 employee and who acts as the manager and "Super" for both the 2281 Church Avenue property.

**B.    Leases/Contracts**

The Debtor does not have any leases to which it is a party other than leases with its tenants, which the Debtor intends to assume through this Plan.

**C.      Employees**

The Debtor employs one individual, who is being paid on a weekly basis as a 1099 employee and who acts as the manager and "Super" for the 2281 Church Avenue Property.

**D.      Assets**

The Debtor's assets consist of the following:

(a)      <u>DIP Account</u>: The Debtor has one bank account held at Flushing Bank, which currently contains approximately $1,000.

(b)      <u>Real properties:</u> The Debtor owns the 2281 Church Avenue Property and the 1232 69th Street Property.

**E.      Liabilities**

The Debtor's liabilities are as follows:

(a)      <u>Secured Debts</u>: Total $2,711,490.90

i.    Flushing Bank which holds a first mortgage against the 2281 Church Avenue Property in the approximate amount of $1,642,601.15; and,

ii.   U.S. Bank NA, As Trustee for Velocity Commercial Capital Loan Trust 2017-1 serviced by PHH Mortgage – which holds a first mortgage lien on the 1232 E. 69th Street property in the approximate amount of $160,623;

iii.  Lien held by NYC Water Board in the amount of $48,206.59;

iv.   Judgment obtained by Calvin Cross in the amount of $529,267.99 plus interest; and,

v.    Judgment obtained by Tralon Ellis in the amount of $330,792.49 plus interest.

(b)      <u>Priority Tax Claims</u>: The Debtor does not owe any past due taxes.

(c)      <u>Non-Tax Priority Claims</u>: The Debtor does not owe any claims in this category.

(d)      <u>Allowed General Unsecured Claims</u>: Total $26,337.93.

**F.    Events Leading to the Filing of the Bankruptcy Case**

The Debtor's financial difficulties, which prompted the instant filing herein, resulted from the following:

a.    On or about February 24, 2018, Calvin Cross ("Cross") and Tralon Ellis ("Ellis") were patrons at a gathering at Woodbine Caterers at the 2281 Church Ave Property, which was being held by a third party. Cross and Ellis were guests at said gathering.

b.    Approximately 4:35 a.m., after the event had ended, a brawl broke out between the guests, which included Cross and Ellis. As a result of the brawl, Cross and Ellis claimed to have sustained serious personal injuries.

c.    On or about August 14, 2018, Cross and Ellis commenced the Cross Ellis Lawsuit in the Supreme Court of the State of New York, County of Kings. The caption of the complaint was amended several times to add the Debtor and Bad Dog Security, LLC. Cross and Ellis alleged to have sustained serious personal injuries, pain and suffering that resulted from the alleged carelessness, negligence, and failure of the defendants, including the Debtor, to prevent the brawl from occurring and from remedying and/or interjecting during the brawl to prevent their injuries.

d.    Among other allegations, Cross and Ellis alleged that the defendants, including the Debtor, failed to stop serving alcohol to visibly intoxicated patrons and failed to remove and/or prevent the presence of visibly intoxicated, rowdy, belligerent and/or dangerous individuals from the premises.

e.    At the time of the incident in February 2018, the Debtor and Woodbine Caterers both had separate commercial property insurance coverage through Global Indemnity Group ("Global"). Unfortunately, after submitting the claim to Global, Global denied coverage. The Debtor explored the option of a potential lawsuit against Global but was advised by an experienced insurance defense attorney that the statute of limitations had expired.

f.    The defendants in the Cross Ellis Lawsuit, including the Debtor, understood the facts to be different from that which Cross and Ellis presented to the court, to wit, that Cross and Ellis touched another individual's wife at the coat check-out which initiated the brawl.

g.    The Debtor, Debtor's principal Oswald David ("Mr. David"), and Woodbine Caterers, retained attorney Louis Klieger, Esq. ("Klieger") located at 11 Park Place, New York, New York, to defend the Cross Ellis Lawsuit on their behalf. On December 10, 2018, Klieger filed an Answer together with affirmative defenses to the original complaint filed by Cross and Ellis on August 14, 2018

asserting, among other things, that Cross and Ellis assumed the risk of attending the event, and injuries sustained were due as a result of their own conduct.

h.  Cross and Ellis then amended their complaint on October 8, 2018, to add the Debtor as a defendant to which Klieger interposed an answer. Cross and Ellis moved the state court to add defendant Bad Dog Security and further amended their complaint on December 9, 2019 to add said defendant. Unfortunately, Klieger failed to interpose an answer to this last amended complaint on behalf of the Debtor, Woodbine Caterers and Mr. David.

i.  Once Klieger became aware that the deadline to interpose an answer had passed, he made a motion to file a late answer. The State Court Judge Landicino denied the motion and rejected Klieger's arguments that the failure to interpose an answer on behalf of the Debtor, Woodbine Caterers and Mr. David, was due to the imposition of COVID-19 restrictions, and a staff member purportedly testing positive for COVID causing the entire office to shut down for a week.

j.  Cross and Ellis thereafter filed a motion to obtain a default judgment. Klieger failed to oppose the motion for default judgment and as a result, on April 26, 2022, a default judgment was entered against the Debtor, Woodbine Caterers and Mr. David in the sum of $430,500 in favor of Cross and in the sum of $269,062.50 in favor of Ellis on April 26, 2022.

k.  After becoming aware of the entry of the default judgment in September 2022, the Debtor, Mr. David and Woodbine Caterers retained attorney Karamvir Dahiya, Esq. ("Dahiya") who filed an Order to Show Cause in the Cross Ellis Lawsuit on December 4, 2022, seeking the issuance of a TRO to stay the enforcement of the judgment and to have the judgment vacated.

l.  Unfortunately, by Order of April 17, 2024, the Supreme Court in the Cross Ellis Lawsuit denied the Order to Show Cause on the basis that the Debtor, Woodbine Caterers and Mr. David failed to establish the existence of a reasonable excuse for failure to appear in the action and file an answer to the last amended complaint by Cross and Ellis.

m.  A Notice of Appeal was thereafter filed by Dahiya on May 16, 2024 ("Appeal"), which is currently pending seeking to vacate the default judgment obtained by Cross and Ellis.

n.  On July 1, 2024, the Debtor received the Sheriff's Notice of Levy and Sale to auction the 2281 Church Avenue property on September 4, 2024.

o.  On August 19, 2024, the Debtor filed the instant bankruptcy to obtain the breathing spell of the bankruptcy process in order to focus its efforts on

prosecuting the appeal to vacate the Cross Ellis Judgment and to reorganize its affairs.

It is the Debtor's goal to pay its debts using its disposable income generated over the next 5 years, and/or a sale of one of its Real Properties and/or funds infused by Debtor's principal.

### G. Debtor's Current Financial Condition

During the period of time that the Debtor has been in bankruptcy from the Petition Date of August 19, 2024 through now, the Debtor has attempted to settle the Cross Ellis Judgment so it could avoid the expense of prosecuting the appeal and/or a trial on the merits in the State Court. The Debtor has been unsuccessful in its attempts at settlement negotiations with Cross and Ellis and has instead made the decision to pursue the appeal to vacate the Cross Ellis Judgment.

On February 13, 2025, Debtor's appellate counsel, Arnold DiJoseph, Esq., filed a brief in the Appellate Court, Second Department, in support of the Debtor's and other defendants' request to vacate the Cross Ellis Judgment. By letter dated March 11, 2025, Cross and Ellis' attorney, Mark David Shirian, Esq., filed a letter requesting a thirty (30) day extension through April 16, 2025, to file their respondents' brief.

A few of the Debtor's tenants at both properties have failed to pay their rent since the filing of the instant bankruptcy as a result of the Sheriff's office visiting the 2281 Church Avenue Property and notifying the tenants to stop paying the rent as the property will be sold at auction. The Debtor is in the process of pursuing collections and/or negotiating a payment of the past due rent from these tenants. If the Debtor is unsuccessful, it may become necessary for the Debtor to commence landlord-tenant proceedings to evict these tenants should they continue to fail to pay the rent due.

As a result of the tenants' failure to pay the rent on time, the Debtor has experienced and continues to experience difficulties in meeting its financial obligations. The Debtor continues its efforts to amicably resolve these issues with its tenants and is hopeful that they will become current on their past due rent shortly.

### H. Significant Events During the Bankruptcy Case.

The significant events during the Debtor's bankruptcy case to date are as follows:

- Retention of Kamini Fox, PLLC, as counsel for the Debtor
- Retention of Schwartz, Conroy & Hack, PC as special litigation counsel to the Debtor to pursue the appeal of the Cross Ellis Judgment and the legal malpractice action against Debtor's former attorney, Louis Klieger, Esq.
- Filed motion seeking for relief from the automatic stay to pursue the appeal of the Cross Ellis Judgment on which a hearing is scheduled to be held on December 4, 2024.
- Filed a Motion seeking use of cash collateral and entry of stipulation with secured

creditor, Flushing Bank with respect to same.
Retention of Arnold E. DiJoseph, P.C. to represent the Debtor in the appeal in the Appellate Division, Second Department, to vacate the Cross Ellis Judgment. Retention of Jackie Henry Realty, LLC, as real estate broker for the Debtor to market and sell Debtor's 2281 Church Avenue property.

The appeal of the Cross Ellis Judgment is anticipated to take approximately one (1) to two (2) years until a decision is made. Should the Debtor be successful with the appeal and the judgment is vacated, the case will be remanded for a trial on the merits in the State Court, which is estimated to take another one to two years before a decision is made on the merits.

## ARTICLE II.

## THE PLAN PROCESS AND
## CONFIRMATION REQUIREMENTS IN A SUBCHAPTER V CASE

In order for a Bankruptcy Court to confirm the Plan, under §§ 1129, 1190, and 1191 of the Bankruptcy Code, the Bankruptcy Court must:

(i) find that the Plan satisfies the "best interest of creditors test"—meaning that creditors will receive more under the Plan than they would get if the Debtor and its assets were liquidated under Chapter 7 of the Bankruptcy Code,

(ii) find that the Plan is "Fair and Equitable"—meaning that the Plan must provide distributions to creditors greater than the liquidation value of the Debtor's Estate and no less than the projected "Disposable Income" of the Debtor, as defined in § 1191(d) of the Bankruptcy Code over a certain commitment period, and

(iii) find that the Reorganized Debtor will be, or is reasonably likely to be, able to make the payments it promises to make under the Plan.

**A.       The Plan Satisfies the "Best Interest of
          Creditors Test" and is "Fair and Equitable"**

This Plan provides for a 100% distribution to all Allowed Claims to the extent provided for in the Plan except for the Cross Ellis Judgment which is disputed, and which amount will be set aside in the Disputed Claims reserve until a determination is made on the appeal and/or a trial on the merits in the State Court.

Subchapter V contemplates that under § 1191(c) of the Bankruptcy Code that a Plan provides that all of the Debtor's projected disposable income for a period of 3 years, not to exceed 5 years as the court may fix, be applied to make payments under the Plan.

As evidenced by the financial projections annexed hereto at Ex. B, the Debtor will be able to make a total distribution of 100% under this Plan over the next five years, except for the Cross Ellis Judgment which will be part of the Disputed Claims reserve which will be paid from the net sale proceeds of the 2281 Church Avenue property should the Debtor lose the appeal and/or the trial on the merits of any subsequent state court action

The Debtor will derive the funds necessary to make payments under the Plan through its projected disposable income for the next 5 years, and thus, the requirements of § 1191(c) of the Bankruptcy Code are satisfied as being in the best interest of creditors and is fair and equitable.

The only impaired classes of claims under the Plan are the claims of Cross and Ellis and Flushing Bank and therefore are entitled to vote on whether to accept or reject the Plan. Cross, Ellis and Flushing Bank all rejected the Debtor's First Amended Plan filed on January 17, 2025 for which the Debtor solicited votes.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. Only a creditor or equity interest holder with an Allowed Claim or Interest has the right to vote on the Plan. Under the Plan, a Claim or equity interest is Allowed, if either (a) the Debtor has listed the Claim on the Schedules, unless the Claim has been listed as disputed, contingent, or unliquidated or (b) the creditor has filed a proof of Claim or equity interest, unless an objection has been filed to the proof of Claim or equity interest. When a Claim or equity interest is not Allowed, the creditor or equity interest holder cannot vote unless the Court, after notice and a hearing, either overrules the objection or allows the Claim or equity interest for voting purposes pursuant to Bankruptcy Rule 3018(a). A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.

Notwithstanding the foregoing, a class that is not impaired is deemed to accept the Plan. While § 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests accept the Plan or not be impaired under the Plan, § 1129(a)(8) of the Bankruptcy Code does not have to be satisfied for a subchapter V plan to be confirmed. *See* 11 U.S.C. § 1191(b). Similarly, while § 1129(a)(10) of the Bankruptcy Code requires that at least one non-insider, impaired class of creditors has accepted the Plan, § 1129(a)(10) of the Bankruptcy Code does not have to be satisfied to confirm this subchapter V Plan. *See* 11 U.S.C. § 1191(b).

If the Holders of Claims in Classes 1 and 5 vote to accept the Plan as set forth in Article III below, the Debtor will seek confirmation of the Plan under §§1191(a) and 1129(a). As stated above, Classes 1 and 5 essentially rejected the Debtor's Plan.

Since the Holders of Claims in Classes 1 and 5 did not vote to accept the Plan as set forth in Article III below, the Debtor will seek confirmation of this Plan pursuant to Section 1191(b) of the Bankruptcy Code, which states that the Court may approve this Plan "if the plan does not

discriminate unfairly, and is fair and equitable" with regard to each impaired class that has not accepted it. Essentially, in the event the Plan is non-consensual, this Court is authorized under § 1191(b) to "cram down" the provisions of the Plan upon all Creditors.

In either case, this will enable the Debtor to satisfy the requirements of Section 1129(a)(7) of the Bankruptcy Code as Classes 1 and 5 claims, which comprises Flushing Bank, Cross and Ellis, will retain under the Plan on account of their claims property of value (the 2281 Church Avenue Property having an estimated value of $15,000,000), as of the Effective Date of the Plan, that is not less than the amount it would so receive or retain if the Debtor were liquidated under a hypothetical Chapter 7 liquidation. Arguably, even if the 2281 Church Avenue property is sold for $5,000,000, it will generate sufficient net sale proceeds to pay all claims in full including the Cross Ellis Judgment should the Debtor lose the appeal and/or subsequent state court action.

**B.      The Plan is Feasible and the Debtor Will be Able to Make All Distributions Under the Plan**

Sections 1191(c)(3)(A)(i) and (ii) of the Bankruptcy Code require that the Debtor "be able to make all payments under the plan; or that there is a reasonable likelihood that the debtor will be able to make all payments under the plan." The Debtor's Plan satisfies these requirements.

In order to make the distributions proposed under the Plan, the Debtor will use its projected disposable income for the next five (5) years, which is estimated at $332,605.20, as per the Final Projections annexed hereto at Exhibit B.

Should the Debtor be successful in the appeal and any subsequent trial on the merits, the Debtor will be under no obligation to make any payments on the Cross Ellis Judgment. Should the Debtor lose the appeal and/or any subsequent trial on the merits of the case, the Debtor is hopeful that its legal malpractice action against Klieger would be successful and the funds received from that lawsuit would be used to satisfy the Cross Ellis Judgment.

Since the filing of the Debtor's First Amended Plan of Reorganization on January 17, 2025, the Debtor has retained real estate broker, Jackie Henry Realty, LLC, to market and sell the 2281 Church Avenue property. Upon the sale of the 2281 Church Avenue property, the Debtor will set aside net sale proceeds in its attorney escrow account sufficient to pay 100% of the Cross Ellis Judgment together with interest in the event the Debtor loses the appeal and/or any subsequent state court action. The 2281 Church Avenue property is being marketed at a sale price of $15,500,000 and should generate more than sufficient funds to pay all Allowed Claims in full on the closing including the Cross Ellis Judgment.

# ARTICLE III.

## TREATMENT OF CLAIMS

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Claims, Professional Fee Claims and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

The categories of Claims and Equity Interests listed below classify Claims for all purposes, including voting, confirmation, and Distribution under this Plan and pursuant to §§ 1122 and 1123(a)(1) of the Bankruptcy Code.

### A.  Unclassified Claims

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims, Priority Tax Claims, and Professional Fee Claims are unclassified claims, not considered Impaired and not entitled to vote on the Plan, because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. Treatment of these claims is provided as follows:

### i.  Administrative Claims

The Debtor must pay all Administrative Claims in full. If an Administrative Claim is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Claim, or in other words, "allow" the Administrative Claim. Any Administrative Claim that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Claim is disputed, payment will be made after the Administrative Claim is allowed by the Bankruptcy Court.

Except to the extent that a Holder of an Allowed Administrative Claim and either the Debtor or Reorganized Debtor, as applicable, agree to a less favorable treatment, each holder of an Allowed Administrative Claim will, in exchange for full and final satisfaction, settlement, release, and discharge of the Allowed Administrative Claim, be paid the full, or as otherwise agreed, unpaid amount of such Allowed Administrative Claim in Cash within fourteen (14) days after the Effective Date, provided, however, that Administrative Claims incurred by the Debtor in

the ordinary course of business shall be paid in the ordinary course of business in accordance with applicable terms and conditions without further notice to or order of the Bankruptcy.

There are several types of Administrative Claims, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. The Debtor's operating expenses (insurance, rents, taxes, etc.) incurred since the Petition Date are Administrative Claims.

3. Administrative Claims also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Subchapter V Trustee for fees and/or reimbursements, and for attorneys, accountants and bookkeepers employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

4. Post-Confirmation Fees and Expenses. Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and consummation incurred by the Debtor. The Debtor shall pay, within ten (10) business days after submission of a detailed invoice to the Debtor, such reasonable claims for compensation or reimbursement of expenses incurred by the retained professionals of the Debtor. If the Debtor disputes the reasonableness of any such invoice, the Debtor or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Confirmation Date, any requirement that professionals comply with §§ 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

5. Administrative Claims Bar Dates: Under the Plan, all holders of Administrative Claims arising subsequent to August 19, 2024 and before the Effective Date (not including Professional Fee Claims (described

below)), and not paid prior to the Confirmation Date, must file with the Court proper requests for payment of such Administrative Claims, and serve copies upon the Debtor, Debtor's counsel, the Subchapter V Trustee, the United States Trustee and any party filing a notice of appearance, on or before the Administrative Claims Bar Date. Parties not complying with this deadline shall be forever barred from seeking payment of those Claims including, without limitation, against the Debtor, the Estate, the Disbursing Agent, if any, or their property, or commencing or continuing any action, employment of process or act to collect, offset or recover any such Administrative Claim. The Debtor will serve the notice of the Administrative Claims Bar Date together with the notice of Confirmation of the Plan pursuant to Bankruptcy Rules 3020(c) and 2002(f).

6. <u>Professional Fee Claims Bar Date</u>: All parties requesting compensation or reimbursement of Professional Fee Claims pursuant to §§ 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered or expenses incurred on behalf of the Debtor or prior to the Effective Date must file applications with the Court, with copies to the Debtor, Debtor's counsel, the Subchapter V Trustee, the United States Trustee and any party filing a notice of appearance, on or before the Professional Fee Claims Bar Date or shall be forever barred from seeking payment of those Professional Fee Claims. The Debtor will serve the Professional Fee Claims Bar Date with the notice of Confirmation of the Plan pursuant to Bankruptcy Rules 3020(c) and 2002(f).

The following chart lists the Debtor's estimated Administrative Claims, and their proposed treatment under the Plan:

| Name of Claimant and Type of Fee | Estimated Amount Owed | Plan Treatment |
|---|---|---|
| Kamini Fox, PLLC as counsel to the Debtor | $55,000.00[1] | Upon application under § 330 and after Bankruptcy Court approval, approved fees and expenses shall be paid in full on the Effective Date of the Plan or the Order approving the fees, whichever is later. |
| Schwartz, Conroy & Hack, PC, special litigation counsel to the Debtor | $5,000.00 | Upon application under § 330 of the Bankruptcy Code and after Bankruptcy Court approval, |

---

[1] Debtor's counsel, Kamini Fox, PLLC, is holding a retainer of $25,000 in escrow which it received pre-petition. Upon approval of its application under section 330 of the Bankruptcy Code for payment of fees, this amount will be offset from the estimated $55,000, leaving only approximately $30,000 to be paid from the Estate on the Effective Date.

| | | approved fees and expenses shall be paid in full on the Effective Date of the Plan or the Order approving the fees, whichever is later. |
|---|---|---|
| Gerard R. Luckman, Esq. Subchapter V Trustee | $10,000.00 | Upon application under § 330 of the Bankruptcy Code and after Bankruptcy Court approval, approved fees and expenses shall be paid in full on the Effective Date of the Plan or the Order approving the fees, whichever is later. |
| **TOTAL:** | **$70,000.00** | |

ii.    <u>Priority Tax Claims</u>.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Bankruptcy Code. Unless the holder of such a Priority Tax Claim agrees otherwise, it must receive the present value of such Claim in regular installments paid over a period not exceeding 5 years from the order of relief. The Debtor is unaware of any claims in this Class.

The estimated amount of Priority Tax Claims is $0.00.

**B.    Classes of Claims and Interests**

Classified Claims and Interests are divided into numbered classes as follows:

<u>Class 1:</u> Class 1 shall consist of the Allowed Secured Claim of Flushing Bank.

<u>Class 2:</u> Class 2 shall consist of the Allowed Secured Claim of U.S. Bank NA, As Trustee for Velocity Commercial Capital Loan Trust 2017-1 serviced by PHH Mortgage ("US Bank").

<u>Class 3:</u> Class 3 shall consist of the Allowed Secured Claim of NYC Water Board.

<u>Class 4:</u> Class 4 shall consist of the Allowed General Unsecured Claim of National Grid.

<u>Class 5:</u> Class 5 shall consist of the Disputed Secured Claims of Calvin Cross and Tralon Ellis.

<u>Class 6:</u> Class 6 shall consist of Allowed General Unsecured Claims.

<u>Class 7:</u> Class 7 shall consist of all Allowed Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

i.    <u>Secured Claims</u>.

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Bankruptcy Code and consists of the following:

| Claimant | Amount of Claim to be paid under Plan | Estimated Payment Under the Plan | Payments/ Frequency | Impairment |
|---|---|---|---|---|
| Flushing Bank | Arrearage: $60,190.16[2] | 100% plus 7% interest | $3,575.52 quarterly | Impaired |
| US Bank | Arrearage: $0.00[3] | 100% | | Unimpaired |
| NYC Water Board | $48,206.59 | 100% | $1,000.00 Monthly | Unimpaired |
| **TOTAL:** | **$108,396.75** | | | |

<u>Class 1</u>: Secured Claim of Flushing Bank

*Classification*: Class 1 consists of the Secured Claim of Flushing Bank.

*Treatment:* Class 1 Claimant is secured by a first mortgage lien on Debtor's Real Property located at 2281 Church Avenue, Brooklyn, NY. Under the Plan, Flushing Bank shall continue to retain its first mortgage lien and security interest in the property. The Debtor will cure the arrearages of $39,484.89 plus post-petition attorney's fees incurred by Flushing Bank in the sum of $20,705.27 plus 7% interest on same by making twenty (20) equal quarterly payments to Flushing Bank over the 5-year length of the Plan of $3,575.52 until this amount is paid in full. The Debtor will continue to make the regular monthly contractual payments due pursuant to its pre-petition agreement with Flushing Bank at the amount of $19,078.08 (or such amount as adjusted from time to time based upon interest fluctuations). Flushing Bank shall continue to retain all of its rights and remedies pursuant to its pre-petition agreement with the Debtor.

---

[2] This amount includes post-petition attorney's fees incurred by Flushing Bank in the sum of $20,705.27.

[3] Total secured claim of US Bank is $160,623.00.

*Voting*: Class 1 is impaired and is entitled to vote on the Plan.

Class 2: Secured Claim of US Bank

    *Classification*: Class 2 consists of the Secured Claim of US Bank

    *Treatment:* Class 2 Claimant is secured by a first mortgage lien on Debtor's Real Property located at 1232 East 69th Street, Brooklyn, NY. Under the Plan, US Bank shall continue to retain its first mortgage lien and security interest in the property. There are no arrears due and owing to US Bank. The Debtor will continue to make the regular monthly contractual payments due pursuant to its pre-petition agreement with US Bank at the amount of $3,357.11 (or such amount as adjusted from time to time based upon interest fluctuations) monthly.

    *Voting*: Class 2 is unimpaired and the holder of this claim is conclusively presumed to have accepted the Plan and not entitled to vote.

Class 3: Secured Claim of NYC Water Board

    *Classification*: Class 3 consists of the Secured Claim of NYC Water Board.

    *Treatment:* Class 3 Claimant will continue to be paid pursuant to its pre-petition agreement entered into with the Debtor and will be paid a total amount of $48,206.59 in 49 monthly installments of $1,000 until its paid in full.

    *Voting*: Class 3 is unimpaired and the holder of this claim is conclusively presumed to have accepted the Plan and not entitled to vote.

    ii.    Allowed Unsecured Non-Tax Priority Claims

    Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code are required to be placed in classes. The Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept a different treatment. The Debtor is not aware of any claims in this category.

Class 4: Allowed General Unsecured Claim of National Grid

    *Classification*: Class 4 consists of the Allowed Unsecured Claim of National Grid.

    *Treatment:* Class 4 Claimant will continue to be paid pursuant to its pre-petition agreement entered into with the Debtor and will be paid a total amount of $5,852.83 with monthly installments of $1,000 until paid in full.

    *Voting*: Class 4 is unimpaired and the holder of this claim is conclusively presumed to have accepted the Plan and not entitled to vote.

<u>Class 5</u>:   Disputed Claims of Cross and Ellis

*Classification*: Class 5 consists of the Disputed Claims of Tralon Ellis and Calvin Cross.

*Treatment:* Class 5 Claimants will not be paid through the Plan as their claims are subject to an appeal in which the Debtor is seeking to vacate their judgment in its entirety. Any distribution to Class 5 Claimants will await a resolution of the appeal and/or a resolution of any subsequent trial on the merits of the case in the State Court. The Debtor shall create a Disputed Claims reserve in which the Debtor will set aside the *pro rata* distribution Class 5 Claimants would have received under the Plan in the quarterly amount of $3,000, with a lumpsum payment to satisfy the claims in full upon the sale of the Debtor's 2281 Church Avenue property. Upon the sale of the 2281 Church Avenue property, the Debtor will set aside in its attorney escrow account sufficient funds to make a 100% distribution to Class 5 claims totaling $860,060.48 ($529,267.99 to Cross and $330,792.49 to Ellis) plus interest at 9% should the Debtor lose the appeal and/or subsequent state court action of a trial on the merits.

Should the Debtor be successful in the appellate court and successful in a subsequent trial on the merits of the Cross Ellis Lawsuit, the Debtor will be under no obligation to make any payments to Class 5 Claimants and the sums set aside to pay the Disputed Class 5 Claim will be distributed to Allowed Claims pursuant to the Bankruptcy Code.

The Debtor will continue to pursue its legal malpractice action against Klieger for indemnification with respect to all damages incurred relating to the Cross Ellis Lawsuit.

*Voting*: Class 5 is a Disputed Claim that is impaired and entitled to vote on the Plan.

iv.   <u>Allowed General Unsecured Claims</u>

Class 6: Allowed General Unsecured Claims

*Classification*: Class 6 consists of all Allowed General Unsecured Claims as follows:

| Claimant | Amount of Claim | Estimated Payment Under the Plan | Quarterly Payments | Impairment |
|----------|-----------------|-------------------|--------------------|------------|
| American Express | $8,201.23 | 100% | $410.06 | Unimpaired |
| Barclays | $3,602.12 | 100% | $180.15 | Unimpaired |
| Synchrony Bank Acct. #: 1159 | $4,213.90 | 100% | $210.70 | Unimpaired |

| | | | | |
|---|---|---|---|---|
| Synchrony Bank Acct. #: 5253 | $4,467.85 | 100% | $223.39 | Unimpaired |
| **TOTAL:** | **$20,485.10** | | | |

*Treatment:* Each holder of an Allowed General Unsecured Claim shall receive, in exchange for full and final satisfaction, settlement, release and compromise of such Allowed Claim, payment of approximately 100% of their Allowed Claims, to be paid in twenty (20) equal quarterly installments until each claimant is paid in full.

*Voting*: Class 6 is unimpaired, and the holders of the Allowed General Unsecured Claims are conclusively presumed to have accepted the Plan and are not entitled to vote.

Class 7: Allowed Equity Interests

*Classification*: Class 7 consists of all Equity Interests.

*Treatment*: The holders of Allowed Equity Interests shall retain their equity interests in the Debtor but shall receive no other distribution under the Plan.

*Voting*: Class 7 is unimpaired, and the holders of the Allowed Equity Interests are conclusively presumed to have accepted the Plan and are not entitled to vote.

## ARTICLE IV.

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

### A.    Objections to Claims

The Debtor may continue to prosecute any objection to any claim filed prior to confirmation of the Plan after the Effective Date. Any Claim subject to an objection which has not been adjudicated by Final Order or otherwise resolved prior to Confirmation will be treated as a Disputed Claim under the Plan. Any objection to Claims shall be filed by the Debtor no later than one hundred and twenty (120) days after the Effective Date, which deadline may be extended by the Court upon application or motion of the Debtor without notice filed prior to the deadline. In the event that any proof of claim is filed, asserted or amended after the Effective Date, the Debtor shall have one hundred twenty (120) days from the date of such filing or notice to object to such claim, which deadline may be extended by the Court upon application or motion of the Debtor without notice filed prior to the deadline. All objections shall be litigated (or settled) to Final Order. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all objections to claims whether filed prior to or after the Effective Date.

### B.    Disallowance of Claims

All Claims against or Interests in the Debtor held by any entity from which property is sought by the Reorganized Debtor under §§ 542, 543, 550, or 553 of the Bankruptcy Code or that

the Reorganized Debtor alleges is a transferee of a transfer that is avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the entity, on the one hand, and the Reorganized Debtor on the other hand, agree or the Bankruptcy Court has determined by Final Order that such entity or transferee is liable to turnover any property or monies under any of the aforementioned §§ of the Bankruptcy Code and (2) such entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

### C.     Amendments to Claims

On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE V.**

**<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

### A.     Assumption and Rejection of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. Except as otherwise provided herein, the Reorganized Debtor is not a party to any executory contracts.  Any Unexpired leases to which the Debtor is a party, are hereby assumed by the Debtor pursuant to §§ 365 and 1123 of the Bankruptcy Code as of the Effective Date unless specifically rejected. Entry of the Confirmation Order shall constitute a Final Order approving the assumption of leases to which the Debtor is a party, if any, as set forth in the Plan pursuant to §§ 365(a) and 1123 of the Bankruptcy Code.

### B.     Insurance Policies.

Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtor shall assume all of the insurance policies pursuant to § 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the Insurance Policies.

### C.     Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided in the Plan, each Executory Contract and/or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract and/or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing

agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts or Unexpired Lease that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### D. Contracts and Leases Entered into After the Petition Date.

Contracts and leases entered into after the Petition Date by the Debtor, and any Executory Contracts or Unexpired Lease assumed by the Debtor, may be performed by the Reorganized Debtor in the ordinary course of business and in accordance with the terms thereof unless they were terminated.

### E. General Reservation of Rights.

Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease that the Reorganized Debtor, or any of its affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## ARTICLE VI.

## MEANS FOR IMPLEMENTAION OF THE PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. This is a Reorganization Plan.

### A. Ability to Fund Plan.

On the Effective Date, the Debtor believes that it will have a small portion of Cash on hand necessary to satisfy all Allowed Administrative Claims and/or Professional Fee Claims. The Debtor's principal will infuse any and all amount necessary to ensure a 100% payment on all Allowed Administrative and Professional Fee Claims on the Effective Date. Debtor's principal will deposit all sums necessary to pay Allowed Administrative Claims and/or Professional Fee Claims in full upon the Effective Date into an escrow account maintain by Debtor's counsel for this case, which shall be a condition precedent to the Effective Date. As of the date of this Plan, Debtor's counsel is holding $25,000 in its attorney escrow account received from Debtor's principal, with all additional funds to be contributed by Debtor's principal, to be used to pay

Allowed Administrative Claims and/or Professional Fee Claims in full on the Effective Date. The Disbursing Agent shall make all payments required under the Plan.

**B.     Ability to Make Future Plan Payments and Operate Without Further Reorganization.**

The Debtor also must show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. For purposes of demonstrating this requirement, the Debtor has prepared projected financial information attached hereto as Exhibit B, which reflects that the Debtor will have projected disposable income (as defined by §1191(d) of the Bankruptcy Code) for a period of five years to make a 100% distribution to holders of Allowed Claims. Payments will be made in twenty (20) equal quarterly payments on all Allowed Claims under the Plan.

The Debtor will use the net sale proceeds from the sale of its 2281 Church Avenue property to fund 100% of the Plan payments and will set aside the sum in its attorney escrow account necessary to satisfy the Cross Ellis Judgment in full should it lose the appeal and/or any subsequent state court action.

The Reorganized Debtor will continue operating the pre-Confirmation business of the Debtor. All distributions under this Plan will be derived from the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code for a period of five (5) years in accordance with the terms prescribed in § 1191(c)(2) of the Bankruptcy Code which disposable income is projected on Exhibit B hereto.

**C.     Liquidation Analysis.**

To confirm this Plan, the Court must find that all creditors who do not accept this Plan will receive at least as much under this Plan as such claim holder would receive in a chapter 7 liquidation. For purposes of demonstrating this requirement, the Debtor has prepared a liquidation analysis attached hereto as Exhibit A. The liquidation analysis does not include any avoidance actions as the Debtor is not aware of the existence of any such actions. The liquidation analysis shows that if the Plan is not confirmed and the Debtor's case is converted to chapter 7 as a result, creditors will receive a 100% distribution due to the significant equity in the Debtor's real properties. As proposed, all creditors will be receiving 100% distribution on their Allowed Claims over a 5-year period which would enable the Debtor to continue to operate its business as a going concern.

**D.     Avoidance Actions/Claims**

The Debtor's accountant has conducted an extensive analysis of the Debtor's books and records and did not find any basis for any avoidance actions.

The Debtor believes it has a valid legal malpractice claim against its former attorney, Louis Klieger, Esq. and is pursuing same through its special litigation counsel, Schwartz, Conroy & Hack, PC. The Debtor believes that due to the malpractice of Klieger, Cross and Ellis were

able to obtain a default judgment against the Debtor, resulting in the necessity of the instant Chapter 11 Case.

One February 19, 2025, a legal malpractice action was commenced on behalf of the Debtor and the other parties against Louis Klieger in the Supreme Court, Kings County captioned *Woodbine Caterers d/b/a Woodbine Ballroom, Oswald C. David, and 2281 Church Ave LLC v. Louis Klieger*, bearing Index No. 505901/2025. Mr. Klieger did appear through counsel and the Debtor and other plaintiffs are hopeful for a positive resolution in the plaintiffs' favor.

The Debtor is also pursuing an appeal of the Cross Ellis Judgment in an attempt to vacate same. Should the Debtor be successful, it will not have to pay the Cross Ellis Judgment. Should the Debtor be unsuccessful, the Debtor is hopeful that it will be indemnified through the Klieger legal malpractice action. Should the Debtor lose both the Klieger legal malpractice action and any subsequent trial on the merits, then the Debtor will sell one of its real properties to pay the Cross Ellis Judgment and all other creditors in full.

**E.    Conditions Precedent to the Effective Date**.

This Plan shall not become effective and the Effective Date shall not occur unless and until the Confirmation Order has become a Final Order.

i.    <u>Waiver of Conditions</u>**.** The Debtor may waive any condition to Confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

ii.    <u>Proof of Deposit to Pay Administrative Claims and/or Professional Fee Claims</u>: Debtor's principal shall deposit all sums necessary to pay Allowed Administrative Claims and/or Professional Fee Claims in full upon the Effective Date into an escrow account maintain Debtor's counsel's for this case.

ii.    <u>Effect of Non-Occurrence of the Effective Date</u>. If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; or (b) constitute an admission, acknowledgement, offer, or undertaking by the Debtor unless contained in a prior Order of this Court. In the event that one or more of the conditions specified herein shall not have occurred or otherwise not have been waived, (a) the Confirmation Order shall be vacated, (b) the Debtor shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Order were never entered, and (c) the Debtor's obligations with respect to Claims shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**F.**     **Post-Confirmation Management.** The Debtor's post-confirmation operations will continue to be managed by Oswald C. David, who will also remain as the Debtor's president, officer, and Debbie Harris, who will remain the Debtor's operating manager. On the Effective Date, Oswald C. David will remain the 100% owner of the Debtor.

**G.**     **Board of Directors.** The Board of Directors of the Reorganized Debtor shall consist of the Debtor's Principal, Oswald C. David and Debbie Harris, operating manager.

**H.**     **Authority to Effectuate the Plan.** Upon the Confirmation Order becoming a Final Order, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Debtor. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder.

**I.**     **Revesting of Assets.**  Consistent with §§ 1123(a)(5)(A) and 1141 of the Bankruptcy Code, title to all assets and property of the estate of the Debtor shall pass to, and vest in, the Reorganized Debtor free and clear of all Claims, Liens, charges and other rights of creditors arising prior to the Effective Date. On and after the Effective Date, the Reorganized Debtor may conduct its financial affairs and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court, except as otherwise provided in this Plan or in the Confirmation Order. Any distribution check that is issued by the Reorganized Debtor but not deposited within one hundred twenty (120) days after its distribution will be deemed abandoned by such creditor and shall pass to and revert in the Reorganized Debtor free and clear of any claims to the distribution. No distribution(s) shall be made to any Allowed creditor if such distribution is $50.00 or less.

## ARTICLE VII.

## TAX CONSEQUENCES OF THE PLAN

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.**

Confirmation of the Plan may have federal income tax consequences for the Debtor and holders of Claims and Interests. The Debtor has not obtained and does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by confirmation of the Plan are governed by the Internal Revenue Code ("IRC") and the regulations promulgated thereunder. Creditors and holders of Interests are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each holder of a Claim or Interest

is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan, including but not limited to the receipt of cash and/or stock under this Plan.

### A. Tax Consequences to the Debtor.

The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because § 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from discharge of indebtedness. However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged. Tax attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

### B. Tax Consequences to Unsecured Creditors.

An unsecured creditor that receives cash in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of its Claim, equal to the difference between (i) the creditor's basis in the Claim (other than the portion of the Claim, if any, attributable to accrued interest), and (ii) the balance of the cash received after any allocation to accrued interest. The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the creditor's hands. A creditor may also recognize income or loss in respect of consideration received for accrued interest on the Claim. The income or loss will generally be ordinary, regardless of whether the creditor's Claim is a capital asset in its hands.

## ARTICLE VIII.

## <u>DISTRIBUTIONS</u>

**A.      Disbursing Agent to Make Distributions.** The distributions that are to be made on and after the Effective Date under this Plan shall be funded from the Reorganized Debtor's business operations, contribution from Debtor's principal and/or sale of one of Debtor's real properties. In the event the Court approves this Plan as a consensual Plan, then the Reorganized Debtor shall be the Disbursing Agent responsible for making any and all post-Confirmation payments that are required under the Plan. In the event the Court approves this Plan by cramdown, the Debtor proposes the Subchapter V Trustee to serve as the Disbursing Agent.

**B.      Method of Payment; Payments, Filings, and Notices Only on Business Days.** Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

**C.      Undeliverable or Unclaimed Distributions.** Payments required by this Plan, if made by check, shall be mailed to the address set forth in any proof of claim, to the address set forth in any written notice of address change filed with the Bankruptcy Court or provided to the Debtor or its counsel, or to the address set forth in the Debtor's schedules if no proof of claim has been filed and no written notice of address change has been filed or provided. If any distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery within 60 days of the later of (a) the Effective Date and (b) the date of the initial attempted distribution. If such Holder provides the requisite notification, the Reorganized Debtor will, within 30 days of receipt of such information, deliver such undeliverable distribution to the Holder. If such Holder fails to provide information within the 60-day period, such undelivered distribution shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code and revert to the Reorganized Debtor.

**D.      Time Bar to Cash Payments.** Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtor free and clear of any restrictions. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, or the Reorganized Debtor.

**E.      Setoff and Recoupment.** From and after the Effective Date, the Reorganized Debtor may, to the extent permitted by § 558 of the Bankruptcy Code or applicable nonbankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Rights of Action of any nature whatsoever that the Reorganized Debtor may have against the Holder of such Claim; provided, however, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor of any other Cause of Action.

**F.      No Interest.** No interest shall accrue or be paid on any Allowed General Unsecured Claim.

**G.      Disputed Claims.** No distribution will be made on account of a Disputed Claim and specifically the Disputed Claims of Cross and Ellis, unless such Claim becomes an Allowed Claim. On any date that distributions are to be made under the terms of this Plan, the Disbursing Agent shall deposit in one or more accounts (either an attorney escrow account or
a segregated account with a banking institution that is a depository authorized by the United States Trustee for bankruptcy cases in the Eastern District of New York), cash equal to 100% of the cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as administrative expenses or as priority claims pursuant to §§ 503 and 507 of the Bankruptcy Code, (ii) claims of governmental units for any tax and (iii) any amount due but not payable on the Effective Date on account of administrative expenses or claims entitled to priority pursuant to §§

503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or proceeds of such cash. Such cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims (such as the Disputed Claims of Cross and Ellis), pending determination of their entitlement thereto. Within fourteen (14) days after the entry of a Final Order resolving the appeal and/or a subsequent trial on the merits of the Disputed Claims of Cross and Ellis and/or an objection to a Disputed Claim, the Disbursing Agent shall distribute all cash, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

## ARITCLE IX.

## EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

**A.      Exculpation.** The Exculpated Parties shall not have any liability to any holder of a Claim or Interest for any claims arising, on or after the Petition Date and prior to or on the Effective Date for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, or claims for legal malpractice, release of which is prohibited by Rule 1.8(h) of the New York Rules of Professional Conduct (22 N.Y.C.R.R. § 1200). In all respects, the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, discharges, and any other applicable law, Bankruptcy Court order, or rules protecting such Persons from liability.


**B.      Injunction.** Generally, except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim that is unclassified by the Plan or that is classified by Article III of the Plan or that is subject to a distribution under the Plan, are permanently enjoined from taking any of the following actions on account of any such Claims or Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against any property to be distributed under the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any property to be distributed under the Plan; (iii) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under the Plan; and (iv) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

**C.      Preservation and Application of Insurance.** The provisions of this Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

**D.      Retention, Reservation, and Prosecution of Rights of Action.** Except as otherwise provided in the Plan, all Rights of Action are retained and reserved for the Reorganized Debtor, which is designated as the Estate's representative under § 1123(b)(3)(B) Bankruptcy Code for purposes of the Rights of Action. The Reorganized Debtor shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Rights of Action, and does so in its capacity as a representative of the Estate in accordance with § 1123(b)(3)(B) of the Bankruptcy Code. The Reorganized Debtor shall have sole discretion to determine in its business judgment which Rights of Action to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, cause, or Right of Action, the Reorganized Debtor shall be entitled to the extensions provided under § 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Rights of Action shall survive confirmation and the commencement or prosecution of Rights of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

**ARTICLE IX.**

**<u>RETENTION OF JURISDICTION</u>**

The Bankruptcy Court shall retain and have subject matter jurisdiction over any matter arising under the Bankruptcy Code, or arising in, out of, or related to this Chapter 11 Case and the Plan, including jurisdiction to:

A.      Resolve any matters related to Executory Contracts, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

B.      Adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

C.      Ensure that distributions to Holders of Allowed Claims are accomplished as provided under this Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

D.      Hear and determine or resolve any and all matters related to Rights of Action;

E.      Enter and implement any orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

F.      Issue and implement orders in aid of execution, implementation, or consummation of this Plan and all contracts, instruments, releases, transactions, and other agreements or documents created in connection with the Plan to the extent authorized by § 1142 of the Bankruptcy Code, including, but not limited to, orders interpreting, enforcing, or clarifying the provisions thereof;

G.      Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

H.      Hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under §§ 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under § 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide, or resolve any and all matters related to §§ 1192 and/or 1141 of the Bankruptcy Code;

I.      Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan;

J.      Hear and determine all suits or adversary proceedings to recover assets of the Debtor and property of its Estate, wherever located;

K.      Hear and determine any timely objections to Claims, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of, or secured or unsecured status of any Claim, in whole or in part;

L.      Hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

M.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or enforcement of the Plan;

N.      Enforce all orders, judgments, and rulings entered in connection with the Chapter 11 Case and to determine any other matters that may arise in connection with or are related to the Plan and the Confirmation Order;

O.      Enforce the permanent injunction created by the Confirmation Order and Article IX hereof;

P.      Hear any other matter not inconsistent with the Bankruptcy Code;

Q.      Hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

R.      Issue a final decree and enter an order closing the Chapter 11 Case; and

S.      Enforce all orders previously entered by the Bankruptcy Court.

T.      Nothing contained in this Article shall be construed to increase, decrease, or otherwise modify the independence, sovereignty, or jurisdiction of the Bankruptcy Court.

## ARTICLE X.

## DISCHARGE OF DEBTOR

### A.      Discharge.

Regardless of whether this Plan is confirmed under § 1191(a) or 1191(b) of the Bankruptcy Code, confirmation of this Plan will not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will not be discharged of any debt:

(i)      on which the last payment is due after the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code; or

(ii)     excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### B.      Continuation of Stays.

In the event the Plan is confirmed under § 1191(a), all stays provided for in the Chapter 11 Case under § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. In the event the Plan is confirmed under § 1191(b), the stay of an act against property of estate under § 362(a) shall terminate on Effective Date, and the stay of any other act under § 362(a) shall remain in full force and effect until the Debtor receives the discharge under § 1191.

## ARTICLE XI.

## MISCELLANEOUS

A.      **Effecting Documents; Further Transactions; Timing.** The Debtor and Reorganized Debtor are authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the

Plan are deemed to have occurred simultaneously.

B.    **Plan Default Remedies.** In the event any payment required pursuant to the Plan is more than ten (10) days overdue, the recipient of such late payment may file a certification of default with the Court, on notice to the Reorganized Debtor, seeking such remedy as the aggrieved party deems appropriate including, but not limited to, seeking to convert the case to a case under chapter 7 of the Bankruptcy Code (which remedy the Reorganized Debtor shall have the opportunity to contest). Notwithstanding anything herein to the contrary, in the event that the Debtor defaults in the payment of ongoing mortgage payments to Flushing Bank as set forth in Class 1 of the Plan, Flushing Bank shall be permitted to pursue its rights and remedies in accordance with the Flushing Mortgage without further order of the Court.

C.    **Governing Law.** Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New York.

D.    **Continuing Viability of Other Orders/Agreements.** Except to the extent expressly modified by the Plan, all Final Orders previously entered by the Bankruptcy Court shall continue in full force and effect.

E.    **Exemption from Transfer Taxes.** Under § 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer, and sale/exchange of assets or property of the Estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

F.    **Modification and Amendments.** The Debtor may alter, amend, or modify this Plan under § 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in § 1101(2) of the Bankruptcy Code, the Debtor may under § 1193(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

G.    **Revocation, Withdrawal, or Non-Consummation.** The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Debtor's filing of a notice thereof, and to file subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Rights of Action

or Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

H.      **Exhibits/Schedules.** All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein. In the event of any inconsistency between the Plan and the exhibits and schedules to the Plan or the Plan Supplement, the terms of the Plan shall control.

I.      **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under §§ 1101(2) and 1127(b) of the Bankruptcy Code.

J.      **Final Decree.** Once the estate has been fully administered and/or substantially consummated, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file an application with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

K.      **Notices.** After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

If to the Reorganized Debtor:

>           2281 Church Avenue LLC
>           2281 Church Avenue
>           Brooklyn, New York 11226
>           Attn:   Oswald C. David
>                   President
>                   Debbieharris399@gmail.com

>            With a copy (which shall not constitute notice) to:

>           Kamini Fox, PLLC
>           825 East Gate Blvd., Suite 308
>           Garden City, New York 11530
>           Attn:   Kamini Fox, Esq.
>                   kamini@kfoxlaw.com

If to the U.S. Trustee:

>           Office of the United States Trustee
>           Alexander Hamilton Custom House
>           One Bowling Green, Rm 510
>           New York, New York 10004-1459
>           Attn:   Shannon Scott, Esq.
>                   Shannon.Scott2@usdoj.gov

If to the Subchapter V Trustee:

> Gerard R. Luckman, Esq.
> Subchapter V Trustee
> Forchelli Deegan Terrana, LLP
> 333 Earle Ovington Blvd., Suite 1010
> Uniondale, NY 11553
> gluckman@forchellilaw.com

**L.**      **Entire Agreement.** Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**M.**      **Severability.** If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtor's consent, and (c) non-severable and mutually dependent.

**N.**      **Conflicts.** Except as set forth in the Plan, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided, however, that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

## ARTICLE XII.

## DEFINITIONS AND RULES OF INTERPRETATION AND CONSTRUCTION

For the purposes of this Plan (as defined herein), the terms set forth in this Article XII shall, subject to the provisions of this paragraph, have the respective meanings hereinafter set forth. Singular terms shall include the plural and plural terms shall include the singular. Definitions herein for any term shall control over any contrary definitions for any such term in the Bankruptcy Code (as defined herein). Terms which are used in this Plan which are undefined herein shall have the meaning given for such term in the Bankruptcy Code.

1.1      "**Administrative Claim**" shall mean a Claim for any expense allowed under Bankruptcy Code §§ 503(b), 507(b), or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(2), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

1.2      "**Administrative Claims Bar Date**" shall mean a Claim for all Administrative Claims except Professional Fee Claims, the first business day that is fifteen (15) days following the Effective Date, unless the Bankruptcy Court has entered an order setting an earlier Administrative Claims Bar Date.

1.3      "**Allowed Claim**" shall mean a Claim which is not a Disputed Claim which (a) was listed in the Debtor's Schedules, without any accompanying reference that the Claim is contingent, disputed, unliquidated, or unknown, provided that such listing was not superseded either by the filing of a proof of claim by a Claimant with the Bankruptcy Court on or before the Claim Bar Date or by a written stipulation between the Claimant and the Debtor which is authorized and approved by a Final Order (in which event such listed Claim shall automatically be deemed expunged and constitute a Disallowed Claim), or (b) was filed in an appropriate form with the Office of the Clerk of the Bankruptcy Court on or before the Claims Bar Date, for a fixed noncontingent definite amount, provided that such filed Claim was not superseded by a written stipulation between the Claimant and the Debtor which is authorized and approved by a Final Order (in which event such filed Claim shall automatically be deemed expunged and to constitute a Disallowed Claim), or (c) is allowed by a Final Order of the Bankruptcy Court, including but not limited to a Final Order which authorizes and approves a written stipulation between a Claimant and the Debtor as to the Claim.

1.4      "**Allowed Equity Interests**" shall mean the Equity Interests of the Debtor's principal, Oswald C. David, as set forth on the Debtor's list of Equity Security Holders filed with the Bankruptcy Court.

1.5      "**Bankruptcy Code**" shall mean Title 11 of the United States Code (11 U.S.C. §101- et seq.), as now in effect or hereafter amended.

1.6      "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Eastern District of New York, which has jurisdiction over this Chapter 11 Case or in the event such court ceases to exercise jurisdiction over this Chapter 11 Case, any other court or adjunct thereof that exercises jurisdiction over this Chapter 11 Case.

1.7      "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure prescribed pursuant to 28 U.S.C. § 2075, as now in effect or hereafter amended, the

Federal Rules of Civil Procedure, as amended, and/or the Local Rules or Orders of the Bankruptcy Court, as applicable to this Chapter 11 Case or proceedings therein, as the case may be.

1.8     "**Business Day**" shall mean any day other than a Saturday or Sunday, except if such day is a Legal Holiday as that term is defined in Bankruptcy Rule 9006.

1.9     "**Cash**" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

1.10    "**Chapter 11 Case**" shall mean the Debtor's Chapter 11 case which is pending before the Bankruptcy Court, commenced on the Petition Date, as to which this Plan pertains, bearing case number 24-43449-jmm.

1.11    "**Claim**" shall mean a claim against the Debtor or its property as defined in the Bankruptcy Code § 101(5).

1.12    "**Claimant**" shall mean any entity that holds a Claim against the Debtor that arose at the time of or before the Petition Date, or an entity that has a Claim against the Bankruptcy Estate of a kind specified in §§ 348(d), 502(f), 502(g), 502(h), or 502(i) of the Bankruptcy Code.

1.13    **"Claims Bar Date"** shall mean December 23, 2024, the date fixed by order of the bankruptcy Court as the date by which all proofs of claim with the exception of those asserted by governmental entities are required to be filed against the Debtor.

1.14    **"Claims Objection Deadline"** shall mean the first Business Day that is thirty (30) days after the Effective Date.

1.15    "**Claims Register**" shall mean the claims register maintained online for this Chapter 11 Case by the Clerk of the Bankruptcy Court, which lists all Claims filed in this Chapter 11 Case, except as the same may be amended, superseded, or withdrawn by any notice, letter or withdrawal of claim filed on the docket maintained online for this Chapter 11 Case by the Clerk of the Bankruptcy Court.

1.16    "**Class**" shall mean a category consisting of holders of Claims or Interests substantially similar in nature to the Claims or Interests of other holders placed in that category, as designated in Article III of the Plan pursuant to § 1122 Bankruptcy Code.

1.17    "**Confirmation Date**" shall mean the date the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

1.18    "**Confirmation Hearing**" shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.19   **"Confirmation Order"** shall mean the order confirming the Plan in accordance with the provisions of the Bankruptcy Code.

1.20   **"Creditor"** shall mean any Claimant whose Claim either (a) arose on or before the Petition Date, or (b) for any reason is deemed to have arisen on or before the Petition Date.

1.21   **"Debt"** shall mean the Debtor's or the Debtor's Estate's potential or actual liability on or with respect to a Claim.

1.22   **"Debtor"** shall mean 2281 Church Avenue LLC, the Debtor and Debtor in Possession herein.

1.23   **"Debtor's Counsel"** shall mean Kamini Fox, PLLC located at 825 East Gate Blvd., Suite 308, Garden City, New York 11530, P: (516) 493-9920, [kamini@kfoxlaw.com](mailto:kamini@kfoxlaw.com).

1.24   **"Debtor's Estate"** shall mean and shall comprise of all of the Debtor's property, to the extent and in the manner set forth at § 541 of the Bankruptcy Code.

1.25   **"Debtor's Principal"** shall mean Oswald C. David.

1.26   **"DIP Account"** shall mean the Debtor's debtor-in-possession account held at Flushing Bank.

1.27   **"Disallowed Claim"** shall mean (a) a Claim listed in the Debtor's Schedules with an accompanying reference that the Claim is contingent, unliquidated, unknown, or disputed (in accordance with Bankruptcy Rule 3003(c)(4) a proof of claim or interest executed and filed in accordance with Bankruptcy Rule 3003 shall supersede any scheduling of that claim or interest in the Debtor's Schedules), (b) a Claim which is deemed expunged or disallowed for the reasons set forth anywhere in this Plan, or (c) a Claim or any portion thereof which is disallowed by a Final Order of the Court.

1.28   **"Disbursing Agent"** shall mean the Debtor and Reorganized Debtor.

1.29   **"Disputed Claim"** shall mean any Claim (or portion thereof), including but not limited to the Cross Ellis Judgment or interest against the Debtor, a Claim or interest that is not an Allowed Claim or Interest and (a) is listed on the Schedules as disputed, unliquidated, or contingent, (b) is filed pursuant to § 501(a) of the Bankruptcy Code as unliquidated or contingent, or (c) as to which the Debtor or any party in interest with standing, has interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules that has not been determined by Final Order.

1.30    **"Distribution"** shall mean a payment to the holder of an Allowed Claim under this Plan.

1.31    **"Distribution Date"** shall mean a date on which a Distribution occurs, which shall be ten (10) days after the Effective Date.

1.32    **"Effective Date"** shall mean the date upon which this Plan shall take effect, which date shall be the fifteenth (15th) date following the Confirmation Date, or if such date is a Saturday, Sunday or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a), the next Business Day thereafter.

1.33    **"Entity"** shall mean any individual, proprietorship, partnership, corporation, estate, trustee, and/or Governmental Unit, including without limitation any form or method of business or charitable organization of persons.

1.34    **"Estate"** shall mean the bankruptcy estate of the Debtor created pursuant to § 541 of the Bankruptcy Code.

1.35    **"Exculpated Parties"** shall mean each of the following involved in this Chapter 11 Case and in the negotiation, implementation, and execution of the Plan solely in their capacity as such: (a) the Debtor, (b) the Reorganized Debtor, (c) the Debtor's and Reorganized Debtor's directors, officers, (d) the Subchapter V Trustee, and (e) the Professionals.

1.36    **"Executory Contract"** shall mean any contract or agreement to which the Debtor is a party that is subject to assumption or rejection under §§ 365 or 1123 of the Bankruptcy Code.

1.37    **"Final Decree"** shall mean an order entered by the Bankruptcy Court closing this Chapter 11 Case.

1.38    **"Final Order"** shall mean an order, judgment, or other decree which is in full force and effect and shall have become final in accordance with applicable law, in that it has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired or been waived in writing in a manner satisfactory to the Debtor, and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition or application for certiorari, rehearing, or review has been fully resolved by the highest court to which the order or judgment was appealed or from which the certiorari, rehearing, or review was sought, and the time to appeal, seek review or rehearing, or petition for certiorari from said ruling has expired or waived in writing in a manner satisfactory to the Debtor, and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending.

1.39    "**General Unsecured Claim**" shall mean any claim against the Debtor existing as of the Petition Date other than (a) a Secured Claim (b) an Allowed Administrative Claim, (b) an Allowed Priority Tax Claim, or (c) a Disputed Claim.

1.40    "**Governmental Bar Date**" shall mean February 17, 2025, at 5:00 p.m. ET, the last date upon which governmental entities may file proofs of claim.

1.41    "**Holder**" shall mean a person holding a Claim or any authorized agent who has completed, executed, and delivered a Ballot in accordance with the applicable voting instructions.

1.42    "**Impaired**" shall mean impaired within the meaning of §§ 1124 and 1191 of the Bankruptcy Code.

1.43    "**Insider**" shall have the meaning ascribed to it in § 101(31) of the Bankruptcy Code.

1.44    "**Insurance Policy**" shall mean any issued policy of insurance and any agreements relating thereto covering the Debtor, the Debtor's Estate, or its assets, directors, officers, members, managers, employees and fiduciaries, or that may be available to provide coverage for Claims against the Debtor or any of the foregoing, including without limitation any general liability, property, workers compensation, casualty, umbrella or excess liability policy(ies), errors and omissions, director and officer or similar executive, fiduciary, and organization liability policy(ies) (A, B, or C coverage), and any tail with respect thereto.

1.45    "**Lien**" shall mean a charge against or interest in property of the Debtor, to secure payment of a debt or performance of an obligation.

1.46    "**Liquidation Value**" shall mean the amount realizable if the Debtor's assets were sold and liquidated under Chapter 7 of the Bankruptcy Code as indicated on Exhibit A annexed hereto.

1.47    "**Notice Parties**" shall mean Debtor's Counsel, the Subchapter V Trustee, the U.S. Trustee and any creditor or party in interest that has appeared in this Chapter 11 Case.

1.48    "**Person**" shall mean an individual, corporation, partnership, joint venture, trustee, estate, unincorporated association, unincorporated organization, but does not include Governmental Unit except as expressly set forth in § 101(41) of the Bankruptcy Code.

1.49    "**Petition**" shall mean the voluntary petition for relief under chapter 11 of the Bankruptcy Code, which the Debtor filed to commence this Chapter 11 Case in the Bankruptcy Court, together with all Schedules.

1.50  "**Petition Date**" shall mean the date of the commencement of the Debtor's Chapter 11 Case herein, being August 19, 2024, on which date the Debtor filed a voluntary chapter 11 petition with the Bankruptcy Court.

1.51  "**Plan**" shall mean this chapter 11 plan, and any exhibits hereto, either in its present form or as may be altered, amended, modified, or supplemented from time to time proposed by the Debtor pursuant to §§ 1190, 1191, and 1129 of the Bankruptcy Code and the Bankruptcy Rules.

1.52  "**Plan Supplement**" shall mean any supplement to this Plan and/or any Exhibits thereto to be filed by the Debtor as permitted herein on or before the Plan Supplement date.

1.53  "**Pre-Petition**" shall mean any date prior to the Petition Date.

1.54  "**Priority Non-Tax Claims**" shall mean those claims afforded priority under § 507(a) Bankruptcy Code other than Administrative Claims and Priority Tax Claims.

1.55  "**Priority Tax Claim**" shall mean that portion of any Governmental Unit's Allowed Unsecured Claim for taxes, which is entitled to priority treatment pursuant to § 507(a)(8) of the Bankruptcy Code, and which is not a Disputed Claim.

1.56  "**Priority Tax Claimant**" shall mean the holder of an Allowed Priority Tax Claim.

1.57  "**Professional**" shall mean those persons (a) retained pursuant to an order of the Bankruptcy Court in accordance with §§ 327, 1103, and/or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to §§ 327, 328, 329, 330, and/or 331 Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to §§ 330 and 503(b)(2) Bankruptcy Code.

1.58  "**Professional Fee Bar Date**" shall mean the first Business Day that is thirty (30) days after the Effective Date.

1.59  "**Professional Fee Claim**" shall mean to the extent Allowed pursuant to a Final Order of the Bankruptcy Court, (a) a claim under §§ 327, 331, 503(b), 1103, or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estate's behalf; by a Professional, which, for this purpose include the Subchapter V Trustee and (b) a claim under § 503(b)(4) of the Bankruptcy Code for compensation for professional services rendered.

1.60  "**Property of the Estate**" shall mean all property that is part of the Debtor's estate in this Chapter 11 Case, as set forth in § 541 of the Bankruptcy Code.

1.61  "**Pro Rata**" with respect to a particular class of Claims, shall mean proportionally and *pari passu*, so that the ratio of the amount of consideration distributed on account of

an Allowed Claim to the holder of the Allowed Claim, is the same as the ratio of the amount of consideration distributed on account of all other Allowed Claims of the class in which the particular Claim is included to the amount of all Allowed Claims of that class.

1.62    "**Reorganized Debtor**" shall mean the Debtor, from and after Confirmation.

1.63    "**Rights of Action**" shall mean any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, and actions against any Person or entity for failure to pay for products or services provided or rendered by the Debtor, all claims, suits or proceedings relating to enforcement of the Debtor's contract rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's or the Reorganized Debtor's businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

1.64    "**Schedules**" shall mean the schedules of assets and liabilities filed by the Debtor herein, and any amendments or supplements thereof.

1.65    "**Secured Claim**" shall mean that portion of an Allowed Claim for which a Claimant asserts to hold a valid, perfected and enforceable Lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but in any event only to the extent of the value, determined in accordance with § 506(a) of the Bankruptcy Code, of the Claimant's interest in the Debtor's interest in the property which is securing such Allowed Secured Claim; the remaining portion of such Allowed Claim shall be an Allowed Unsecured Claim. However, if the validity of the underlying Lien is Disputed by the Debtor, then the Claimant shall only be deemed to hold an Allowed Secured Claim if the validity of the Lien is approved by a Final Order.

1.66    "**Subchapter V Trustee**" shall mean Gerard R. Luckman, Esq., the Subchapter V trustee appointed by the U.S. Trustee under § 1183(a) of the Bankruptcy Code.

1.67    "**Unsecured Creditor**" shall mean the holder of a General Unsecured Claim.

1.68    "**U.S. Trustee**" shall mean the Office of the United States Trustee for the Eastern District of New York, Alexander Hamilton Custom House, One Bowling Green, Room 510, New York, NY 10004.

1.69    "**Unexpired Lease**" shall mean a lease of nonresidential real property to which Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

1.70    "**Unimpaired**" shall mean, with respect to a Class of Claims or interests, such Class is not Impaired.

1.71    "**Voting Deadline**" shall mean the date by which a Claimant must deliver a ballot to accept or reject this Plan relating to the solicitation of votes with respect to this Plan.

**A.**     **Generally**. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in § 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

**B.**     **Time Periods**. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**C.**     **Miscellaneous Rules**. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

Dated: Garden City, New York          Respectfully submitted,
      March 28, , 2025

                                        **KAMINI FOX, PLLC**

                     By:     */s/ Kamini Fox*
                                 Kamini Fox, Esq.
                                 825 East Gate Blvd.,
                                 Suite 308
                                 Garden City, NY 11530
                                 (516) 493-9920

kamini@kfoxlaw.com
*Counsel for the Debtor
and Debtor-In-Possession*

Dated: Brooklyn, New York
March 28, 2025

_/s/ Oswald C. David__
Oswald C. David