CULLEN AND DYKMAN LLP
The Omni Building
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
(516) 357-3700
Bonnie L. Pollack, Esq.
Kyriaki A. Christodoulou, Esq.
bpollack@cullenllp.com
kchristodoulou@cullenllp.com

*Counsel for Flushing Bank*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| 2281 CHURCH AVENUE LLC | : | Case No. 24-43449 (JMM) |
| | : | |
| Debtors. | : | |

------------------------------------------------------------ x

## SUPPLEMENTAL OBJECTION TO CONFIRMATION OF SECOND AMENDED PLAN OF REORGANIZATION

TO THE HONORABLE JIL MAZER-MARINO,
UNITED STATES BANKRUPTCY JUDGE:

Flushing Bank ("Flushing"), by and through its attorneys Cullen and Dykman LLP, as

and for its supplemental objection to the Debtor's Second Amended Plan of Reorganization (the

"Plan") dated March 28, 2025, filed in the above-captioned case, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1.      The Debtor previously filed an amended plan of reorganization on January 17,

2025 (the "Prior Plan"). Although Flushing determined not to file an objection to the Prior Plan,

it repeatedly expressed its position that the Prior Plan lacked feasibility. The Debtor then further

amended the Prior Plan by the filing of the Plan presently before the Court. Because Flushing

continues to believe that the Plan is not feasible, and because the Plan now has additional

provisions detrimentally effecting Flushing, Flushing filed an objection to confirmation of the Plan on April 22, 2025 (the "Original Objection"). On April 30, 2025, the date of the hearing scheduled on confirmation of the Plan, the Court adjourned the confirmation hearing to August 13, 2025. Notably, in the more than three (3) months since that day, the Debtor has never once reached out to Flushing's counsel to attempt to resolve the confirmation issues raised in the Original Objection. Since that time, those issues have expanded. As a result, Flushing now files this supplemental objection to confirmation of the Plan.

2.      The factual background and confirmation objections included in the Original Objection are incorporated herein by reference. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Original Objection.

3.      As set forth in the Original Objection and below, the Plan lacks feasibility, the Plan is not proposed in good faith with respect to the sale of the Church Ave. Property and the Plan fails to allow for Flushing's right to credit bid. The Plan, therefore, cannot be confirmed.

**A.  The Plan is Not Feasible**

4.      In support of feasibility, the Plan provides that the Debtor has gross monthly income from its two properties in the amount of $41,625, $32,520 of which is attributable to the Church Ave. Property. The Plan further states that the Debtor's projected net income is $5,543.42 per month, $1,506 of which is attributable to the Church Ave. Property.

5.      Notwithstanding those financials, as set forth in the Cash Collateral Order, the gross income from the Church Ave. Property only amounts to $22,070 per month (more than $10,000 less than stated in the Plan), calling into question whether the Debtor has *any* net income per month. Indeed, as stated in the Cash Collateral Order, the net income related to the Church Ave. Property is negative (although it states a net income of $457.19, it was based on a

mortgage payment of $16,112.81; however, the mortgage amount is actually $19,182.60). Thus, the amounts set forth in the Plan entirely lack credibility.

6. In addition, pursuant to the Debtor's monthly operating reports through May 2025, the Debtor operated at a loss each month except in January 2025, as follows:

| Month | Loss (Except where noted) |
|-------|---------------------------|
| August 2024 | $6,431.44 |
| September 2024 | $7,831.44 |
| October 2024 | $431.44 |
| November 2024 | $4,831.44 |
| December 2024 | $2,230.19 |
| January 2025 | $2,587.66 (profit) |
| February 2025 | $4,530.19 |
| March 2025 | $7,130.19 |
| April 2025 | $10,437.71 |
| May 2025 | $1,334.71 |

7. Thus, the Debtor's net monthly income is nowhere near the projected amount of $5,543.42 per month contained in the Plan. The Debtor, therefore, cannot establish feasibility of the cash flow needed to support payments under the Plan.

8. This lack of feasibility is exemplified by the fact that the Debtor has been late in making its required mortgage payments to Flushing every month since the filing. Even though the payments to Flushing are due on the first day of each month, the payments were actually made much later almost every month, as follows:

| Month | Payment Date |
|---|---|
| September 2024 | September 18, 2024 |
| October 2024 | October 23, 2024 |
| November 2024 | November 20, 2024 |
| December 2024 | December 17, 2024 |
| January 2025 | January 30, 2025 |
| February 2025 | March 10, 2025 |
| March 2025 | April 10, 2025 |
| April 2025 | April 29, 2024 |
| May 2025 | May 21, 2025 |
| June 2025 | July 14, 2025 |
| July 2025 | Still unpaid |
| August 2025 | Still unpaid |

9.      The Debtor has therefore defaulted under the mortgage and under the Cash Collateral Order every month since this case has been filed. If this does not attest to the lack of feasibility, it is unclear what would.

10.      Given the fact that the net income asserted by the Debtor lacks any factual accuracy, and given that the Debtor has defaulted each month in the payment of the Flushing mortgage, it is clear that the Plan lacks feasibility and should not be confirmed by the Court.

**B. The Plan is Not Proposed in Good Faith as to the Proposed Sale**

11.     Apparently, the Debtor also knew that the Plan was not feasible and provided in the Plan that the Church Ave. Property would be sold to pay claims thereunder. As set forth in the Original Objection, Flushing asserted that the terms of sale as proposed by the Debtor and the actions of the Debtor and the broker in connection with such a sale suggested that the Debtor hoped to keep delaying the sale rather than actually moving forward to sell the property in what Flushing asserted lacks good faith.

12.     As previously suggested by Flushing, the broker chosen by the Debtor has little relevant experience selling commercial property in the boroughs of New York. Indeed, a review of her website makes it readily apparent that her focus is on small residential homes in rural upstate New York. According to that website, she has only sold one commercial building at all. Given this, it is unlikely that the broker will have any success in selling the Church Ave. Property, thus delaying the sale to the detriment of creditors. This seems especially true given the listing price set by the broker, which has absolutely no basis in reality. The broker listed the Church Ave. Property for *$15 million*. This is not based on any valuation of the property. In fact, (a) the Debtor valued the Church Ave. Property at $4 million in its schedules, (b) Flushing's appraisal in 2017 indicates a value of $4,100,000 (*see*, Exhibit "A" to Original Objection), and (c) even a review of Zillow indicates a value of $2,839,500. Listing the value at $15 million shows that the broker has no idea of what she is doing, and the fact that the Debtor allows her to list the property at $15 million, knowing that there is no way that the property will sell for anywhere near that, shows the Debtor's bad faith in its proposal to sell the Church Ave. Property pursuant to the Plan.

13.     Because of this, Flushing requested that if the Church Ave. Property is not sold within 6 months of confirmation (or a bona fide contract entered into within that time), that the

property be sold at an auction sale with a broker of Flushing's choice (Flushing later informed the subchapter V trustee that it was willing to have the auction process conducted by a broker of the trustee's choosing). This was rejected out of hand by Debtor's counsel, who asserted that was that Flushing was "wasting her time".

14.     Indeed, Flushing's position on the broker and the ability of the broker to sell the Church Ave. Property on the terms proposed by the Debtor and the broker has been proven true. As of July 2, 2025, Debtor's counsel advised that "The real estate broker informed me that there was 1 interested buyer who backed out. There have been no real interested buyers to date." In response, Flushing's counsel responded, stating that "This is not surprising, considering the price at which this property was listed. When is the broker going to reduce the price and to how much?" Flushing never received a reply to that email. When asked of the status again on August 4, 2025, Debtor's counsel provided the following response: "No offers were received and the listing period ended with the Debtor not extending and/or renewing the listing. Currently, the property located at 2281 Church Avenue is not being marketed for sale [despite the fact that the Plan provides for same] and the Debtor will continue to pay Flushing Bank pursuant to its pre-petition agreement [despite that it has systematically failed to do so under the terms of the loan documents since the filing of the case]." Those emails are annexed as Exhibit "A."

15.     As demonstrated above, there is an utter lack of feasibility of this Plan if the Church Ave. Property is not sold. The numbers just do not support the proposed treatment of claims. Since a sale of the Church Ave. Property is a necessity under the Plan given the lack of financial feasibility otherwise, the failure of the Debtor to provide a reasonable mechanism for the sale amounts to a lack of good faith in connection with the Plan since the Debtor knew that the terms of sale originally proposed were untenable, and has only managed to delay the

exercise of creditors' rights by 4 months. Thus, not only is the Plan not feasible, it was not proposed in good faith and must not be confirmed.

## C.  The Plan Still Fails to Satisfy Section 363(k) of the Bankruptcy Code

16.     To the extent that the Church Ave. Property will in fact be sold to pay claims, Flushing has a right under section 363(k) to credit bid its debt in connection therewith. This credit bid right is not included in the Plan, although requested by Flushing. Thus, the Plan fails to satisfy section 363(k), and therefore section 1129(a)(1) of the Bankruptcy Code on this basis as well.

17.     Finally, the Plan must make clear in the description of the treatment of Flushing's secured claim in Article III that Flushing will be paid on a sale of the Church Ave. Property. The Debtor's counsel seemed to suggest that Flushing would NOT be paid if the Church Ave. Property is sold, against all credibility and did not agree to make this change. This clarification must be made as well.

## D.  The Debtor is Improperly Using Cash Collateral and Not Provided Proof of Insurance

18.     Because the Debtor has filed a Plan that is not acceptable to Flushing, the right of the Debtor to use cash collateral terminated as of April 4, 2025 under the Cash Collateral Order. Specifically, paragraph 7 of the Cash Collateral Order provides, in pertinent part, as follows:

> Events of Default/Termination Date. Unless Secured Party otherwise agrees in writing, so long as Secured Party is owed money by the Debtor, this Stipulation shall terminate (the "Termination Date") upon the earliest of any of the following Events of Default: …. (g) Debtor's failure to file a plan of reorganization agreed to by the Secured Party and reasonably anticipated to be confirmable, within six (6) months of the Petition Date; (h)  filing of or support by Debtor for, or confirmation of, any plan of reorganization or liquidation in the Bankruptcy Case that (x)(i) has not been agreed to by the Secured Party in its sole discretion, or (ii) does not provide for the indefeasible payment in full in cash on the effective date of such plan of all of the Secured Party Debt (whether or not such amounts are allowed claims), or (y) provides for the sale of any of Debtor's assets pursuant to Section 363 of the Bankruptcy Code and does not preserve the right of the

Secured Party to credit bid all or any portion of the Secured Party Debt at such sale....On the Termination Date, Secured Party's consent to use Cash Collateral shall be deemed withdrawn and, upon three (3) days' written notice to the Debtor of the occurrence of the Termination Date, the Debtor's use of Cash Collateral shall be deemed terminated, and the Debtor may not continue to use Cash Collateral except upon Secured Party's written consent or further order of the Court.

*See*, Cash Collateral Order, Exhibit "B".

19.     By letter dated March 31, 2025, the Debtor was advised of the termination of the use of Cash Collateral as of April 4, 2025 based on the foregoing defaults. *See*, Exhibit "C". Notwithstanding this, the Debtor has continued to use Cash Collateral without seeking a further order of the Court. As set forth in Exhibit "D" hereto, the Debtor has expended $10,915 of Cash Collateral in April, 2025 (not including the Mortgage payment) and $12,915 in May, 2025 (also not including the Mortgage payment), when the Debtor had no right to do so.

20.     Finally, the Court should note that the Debtor has not provided Flushing with proof of insurance for the period of May 24, 2025 through July 24, 2025, as a result of which insurance needed to be force placed by Flushing.

[Remainder of Page Intentionally Left Blank]

21.     For all of these reasons and for those set forth in the Original Objection, the Court should deny confirmation of the Plan, and grant Flushing such other and further relief as is deemed just and proper including without limitation, conversion of the Debtor's case to chapter 7.

Dated: Uniondale, New York
       August 5, 2025

CULLEN AND DYKMAN LLP

By:    *s/Bonnie L. Pollack*
       Bonnie L. Pollack, Esq.
       Kyriaki A. Christodoulou, Esq.
The Omni Building
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
(516) 357-3700
bpollack@cullenllp.com
kchristodoulou@cullenllp.com

# EXHIBIT A

## Pollack, Bonnie

| | |
|---|---|
| **From:** | Kamini Fox <kamini@kfoxlaw.com> |
| **Sent:** | Monday, August 4, 2025 2:29 PM |
| **To:** | Pollack, Bonnie |
| **Cc:** | Gerard R. Luckman |
| **Subject:** | [EXTERNAL]2281 Church Avenue - Status of Sale of 2281 Church Ave Property |
| **Attachments:** | Outlook-mda5kpyi |

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Ms. Pollack:

No offers were received and the listing period ended with the Debtor not extending and/or renewing the listing.

Currently, the property located at 2281 Church Avenue is not being marketed for sale and the Debtor will continue to pay Flushing Bank pursuant to its pre-petition agreement.

Regards,



**Kamini Fox**
Managing Partner
Kamini Fox, PLLC

**Phone:** 516-493-9920
**Mobile:** 516-528-6344
**Fax:** 516-255-6905
**Email:** kamini@kfoxlaw.com

825 East Gate Blvd., Suite 308
Garden City, NY 11530

**www.kfoxlaw.com**



Confidentiality Notice: This e-mail is sent by an attorney or his/her agent and is intended only for the addressee's use and may contain confidential and privileged information. If you are not the intended recipient, you are hereby notified that any retention, dissemination, reproduction, or use of the information contained in this e-mail is strictly prohibited. If you have received this e-mail by error, please delete it and immediately notify the sender. Thank you for your cooperation.

Tax Advice Disclosure: To ensure compliance with the requirements imposed by the IRS in Circular 230, you are hereby informed that any U.S. federal tax advice contained in this communication (including attachments) is not intended or written to be used and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**From:** Pollack, Bonnie <bpollack@cullenllp.com>
**Sent:** Monday, August 4, 2025 9:55 AM
**To:** Kamini Fox <kamini@kfoxlaw.com>
**Cc:** Gerard R. Luckman <gluckman@forchellilaw.com>
**Subject:** RE: [EXTERNAL]2281 Church Avenue - Status of Sale of 2281 Church Ave Property

Kamini- please provide an updated status on this. Thank you.

**Bonnie Pollack**
Partner
**Cullen and Dykman LLP**
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
T: 516.296.9143 | F: 516.357.3792
E: bpollack@cullenllp.com
Pronouns: She/Her

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

**From:** Kamini Fox <kamini@kfoxlaw.com>
**Sent:** Wednesday, July 2, 2025 1:38 PM
**To:** Pollack, Bonnie <bpollack@cullenllp.com>
**Cc:** Gerard R. Luckman <gluckman@forchellilaw.com>
**Subject:** [EXTERNAL]2281 Church Avenue - Status of Sale of 2281 Church Ave Property

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.
Ms. Pollack:

The real estate broker informed me that there was 1 interested buyer who backed out.

There have been no real interested buyers to date.

Regards,



**Kamini Fox**
Managing Partner
Kamini Fox, PLLC

Phone: 516-493-9920
Mobile: 516-528-6344
Fax: 516-255-6905
Email: kamini@kfoxlaw.com

825 East Gate Blvd., Suite 308
Garden City, NY 11530

www.kfoxlaw.com



Confidentiality Notice: This e-mail is sent by an attorney or his/her agent and is intended only for the addressee's use and may contain confidential and privileged information. If you are not the intended recipient, you are hereby notified that any retention, dissemination, reproduction, or use of the information contained in this e-mail is strictly prohibited. If you have received this e-mail by error, please delete it and immediately notify the sender. Thank you for your cooperation.

Tax Advice Disclosure: To ensure compliance with the requirements imposed by the IRS in Circular 230, you are hereby informed that any U.S. federal tax advice contained in this communication (including attachments) is

not intended or written to be used and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

---

**From:** Kamini Fox <kamini@kfoxlaw.com>
**Sent:** Friday, June 27, 2025 9:23 AM
**To:** Pollack, Bonnie <bpollack@cullenllp.com>
**Cc:** Gerard R. Luckman <gluckman@forchellilaw.com>
**Subject:** Re: 2281 Church Avenue

Ms. Pollack:

As far as I know, there have been no accepted offers on the 2281 Church Ave property.

I have reached out to the real estate broker to get a status update and will let you know when I do.

With respect to moving to seek relief from stay, of course, that is a decision you will have to make on behalf of your client.

I will advise you as soon as I receive the above information.

Regards,



**Kamini Fox**
Managing Partner
Kamini Fox, PLLC

Phone: 516-493-9920
Mobile: 516-528-6344
Fax: 516-255-6905
Email: kamini@kfoxlaw.com

825 East Gate Blvd., Suite 308
Garden City, NY 11530
www.kfoxlaw.com

Confidentiality Notice: This e-mail is sent by an attorney or his/her agent and is intended only for the addressee's use and may contain confidential and privileged information. If you are not the intended recipient, you are hereby notified that any retention, dissemination, reproduction, or use of the information contained in this e-mail is strictly prohibited. If you have received this e-mail by error, please delete it and immediately notify the sender. Thank you for your cooperation.

Tax Advice Disclosure: To ensure compliance with the requirements imposed by the IRS in Circular 230, you are hereby informed that any U.S. federal tax advice contained in this communication (including attachments) is not intended or written to be used and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

---

**From:** Pollack, Bonnie <bpollack@cullenllp.com>
**Sent:** Thursday, June 26, 2025 4:09 PM
**To:** Kamini Fox <kamini@kfoxlaw.com>

**Subject:** 2281 Church Avenue

What is the status of the marketing of the property? Please provide a detailed status report from the broker (number of inquiries, number of walk throughs, bids, etc.). Given that the Debtor is still not funding its account sufficiently to pay the mortgage timely, or at all, unless there is some incredible interest in this property, I will need to consider trying to move the August 13 hearing up.

Thank you,.

**Bonnie Pollack**
Partner
**Cullen and Dykman LLP**
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
T: 516.296.9143 | F: 516.357.3792
E: bpollack@cullenllp.com
Pronouns: She/Her

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

# Pollack, Bonnie

| | |
|---|---|
| **From:** | Pollack, Bonnie |
| **Sent:** | Wednesday, July 2, 2025 2:05 PM |
| **To:** | Kamini Fox |
| **Cc:** | Gerard R. Luckman |
| **Subject:** | Re: [EXTERNAL]2281 Church Avenue - Status of Sale of 2281 Church Ave Property |

This is not surprising, considering the price at which this property was listed. When is the broker going to reduce the price and to how much?
Sent from my iPhone

> On Jul 2, 2025, at 1:38 PM, Kamini Fox <kamini@kfoxlaw.com> wrote:

> CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

> Ms. Pollack:

> The real estate broker informed me that there was 1 interested buyer who backed out.

> There have been no real interested buyers to date.

> Regards,

> <Outlook-tdejhssc>
>
> **Kamini Fox**
> Managing Partner
> Kamini Fox, PLLC
>
> Phone: 516-493-9920
> Mobile: 516-528-6344
> Fax: 516-255-6905
> Email: kamini@kfoxlaw.com
>
> 825 East Gate Blvd . Suite 308
> Garden City. NY 11530
> www.kfoxlaw.com
>
> <Outlook-Title_Lin.png>
>
> <Outlook-Title_ goo.png>

Confidentiality Notice: This e-mail is sent by an attorney or his/her agent and is intended only for the addressee's use and may contain confidential and privileged information. If you are not the intended recipient, you are hereby notified that any retention, dissemination, reproduction, or use of the information contained in this e-mail is strictly prohibited. If you have received this e-mail by error, please delete it and immediately notify the sender. Thank you for your cooperation.

Tax Advice Disclosure: To ensure compliance with the requirements imposed by the IRS in

Circular 230, you are hereby informed that any U.S. federal tax advice contained in this communication (including attachments) is not intended or written to be used and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**From:** Kamini Fox <kamini@kfoxlaw.com>
**Sent:** Friday, June 27, 2025 9:23 AM
**To:** Pollack, Bonnie <bpollack@cullenllp.com>
**Cc:** Gerard R. Luckman <gluckman@forchellilaw.com>
**Subject:** Re: 2281 Church Avenue

Ms. Pollack:

As far as I know, there have been no accepted offers on the 2281 Church Ave property.

I have reached out to the real estate broker to get a status update and will let you know when I do.

With respect to moving to seek relief from stay, of course, that is a decision you will have to make on behalf of your client.

I will advise you as soon as I receive the above information.

Regards,

<Outlook-hlrxaehz>

**Kamini Fox**
Managing Partner
Kamini Fox, PLLC

Phone: 516-493-9920
Mobile: 516-528-6344
Fax: 516-255-6905
Email: kamini@kfoxlaw.com

825 East Gate Blvd., Suite 308
Garden City, NY 11530

www.kfoxlaw.com

<Outlook-Title_Lin.png>

<Outlook-Title_ goo.png>

Confidentiality Notice: This e-mail is sent by an attorney or his/her agent and is intended only for the addressee's use and may contain confidential and privileged information. If you are not the intended recipient, you are hereby notified that any retention, dissemination, reproduction, or use of the information contained in this e-mail is strictly prohibited. If you have received this e-mail by error, please delete it and immediately notify the sender. Thank you for your cooperation.

Tax Advice Disclosure: To ensure compliance with the requirements imposed by the IRS in Circular 230, you are hereby informed that any U.S. federal tax advice contained in this communication (including attachments) is not intended or written to be used and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**From:** Pollack, Bonnie <bpollack@cullenllp.com>
**Sent:** Thursday, June 26, 2025 4:09 PM
**To:** Kamini Fox <kamini@kfoxlaw.com>
**Cc:** Gerard R. Luckman <gluckman@forchellilaw.com>
**Subject:** 2281 Church Avenue

What is the status of the marketing of the property? Please provide a detailed status report from the broker (number of inquiries, number of walk throughs, bids, etc.). Given that the Debtor is still not funding its account sufficiently to pay the mortgage timely, or at all, unless there is some incredible interest in this property, I will need to consider trying to move the August 13 hearing up.

Thank you,.

**Bonnie Pollack**
Partner
**Cullen and Dykman LLP**
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
T: 516.296.9143 | F: 516.357.3792
E: bpollack@cullenllp.com
Pronouns: She/Her

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

       2281 CHURCH AVENUE LLC,

                              Debtor.
-----------------------------------------------------------X

Chapter 11

Sub. V

Case No.: 24-43449 (JMM)

## STIPULATION AND ORDER AUTHORIZING FINAL USE
## OF CASH AND OTHER COLLATERAL AND GRANT OF
## <u>ADEQUATE PROTECTION TO FLUSHING BANK</u>

### <u>RECITALS</u>

**WHEREAS**, on August 19, 2024 (the "Petition Date"), 2281 Church Ave LLC (the

"Debtor") filed a voluntary petition for relief under Chapter 11 Subchapter V of Title 11 of the

United States Code ("Chapter 11 Case"), 11 U.S.C.§§ 101, et. sec. (as amended, the "Bankruptcy

Code") in the United States Bankruptcy Court for the Eastern District of New York (the

"Bankruptcy Court").

**WHEREAS**, the Debtor has continued in possession of its property and the management

of its business affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the

Bankruptcy Code; and

**WHEREAS**, on August 20, 2024, the United States Trustee appointed Gerard R.

Luckman, Esq. (the "Subchapter V Trustee") to serve as Subchapter V trustee in this Chapter 11

Case pursuant to § 1183(a) of the Bankruptcy Code and has qualified and served in that capacity.

No examiner or official committee has been appointed heretofore; and

**WHEREAS,** on or about January 26, 2018 , the Debtor, for good and valuable

consideration, duly executed and delivered to Flushing Bank ("Secured Party" or "Flushing

Bank") a certain Note dated January 26, 2018 ("Note") under which the Debtor promised to pay

1

to the order of Flushing Bank the principal amount of One Million Seven Hundred Fifty

Thousand and 00/100 ($1,750,000.00) DOLLARS, together with interest at the rate of 5.25% set

forth therein, a copy of which is annexed hereto as Exhibit A; and

  **WHEREAS**, as security for payment of the Note, the Debtor executed and delivered to

Flushing Bank a certain Mortgage, Security Agreement and Assignment of Leases and Rents

dated January 26, 2018 (the "Mortgage", together with the Note, the "Loan Documents.The

Mortgage granted Flushing Bank a lien against the property located at 2281 Church Avenue,

Brooklyn, New York 11226 (the "Real Property"), and a security interest in and lien on all of the

Debtor's personal property and business assets, including, without limitation, deposit accounts,

all of its machinery and equipment, inventory, accounts (including accounts receivable),

documents, chattel paper, investment property, instruments, general intangibles, all rents, issues

and profits, the rights in or the proceeds of any fire and/or hazard insurance policy, ledgers and

records, and all other property defined and described as Collateral therein, whether then owned

or thereafter acquired, together with all products and proceeds thereof (collectively, the

"Collateral"); and

  **WHEREAS**, Flushing Bank perfected its first priority security interests in and to the

Collateral by filing a UCC-1 Financing Statement ("UCC-1") in the Office of the New York

Department of State on March 6, 2018 as Filing No. 201803060107837 and a continuation on

October 18, 2022 as Filing No. 202210180436225; and

  **WHEREAS**, there was, as of August 20, 2024, due and owing to Flushing Bank (the

"Flushing Debt") under the Loan Documents (exclusive of attorneys' fees, interest and expenses),

the following:

| Principal: | $1,516,544.46 |
| Fees: | $    1,345.48 |
| **Total due as of August 20, 2024:** | **$1,517,889.80** |

Interest continues to accrue on the unpaid principal balance of the Loan at the present rate of 6.94% per annum ($292.36 per diem); and

**WHEREAS**, the Debtor agrees and acknowledges that Flushing Bank holds a valid, perfected and enforceable first priority lien on the Collateral, including but not necessarily limited to all proceeds derived therefrom (collectively, the "Pre-Petition Collateral"), which Pre-Petition Collateral secures Flushing Bank's claims, pursuant to and in accordance with Loan Documents, and this agreement and acknowledgement shall not be binding on any party other than the Debtor; and

**WHEREAS,** the Debtor acknowledges and agrees that all cash equivalents, whether in the form of cash, rents, accounts generated therefrom, security deposits, deposit accounts, chattel paper, instruments, inventory, investment property, letters of credit, or in any other form, whenever acquired, which represent income, proceeds, products, rents, or profits of the Pre-Petition Collateral that are now in the possession, custody or control of the Debtor, or in which the Debtor will obtain an interest during the pendency of the chapter 11 case, are and shall be treated as the "cash collateral" in which Flushing Bank has asserted a security interest for the purposes, and within the meaning, of Bankruptcy Code § 363(a) (collectively, the "Cash Collateral"), and this agreement and acknowledgement shall not be binding on any party other than the Debtor; and

**WHEREAS,** pursuant to § 363(c)(2) of the Bankruptcy Code, the Debtor cannot use the Cash Collateral without the consent of Flushing Bank or without order of the Bankruptcy Court; and

3

**WHEREAS,** the Debtor cannot meet its ordinary operating expenses or maintain and preserve its property as a going business without the use of the Cash Collateral; and

**WHEREAS,** the Debtor and Flushing Bank hereby stipulate and agree to provide for the use of the Cash Collateral and to provide Flushing Bank with adequate protection therefor as defined in §§ 361 and 363(a) of the Bankruptcy Code specifically upon and subject to the terms and conditions as stated below; and

**WHEREAS,** after negotiations, Flushing Bank consents to the Debtor's continued use of the Collateral, including Cash Collateral, retroactively as of the Petition Date and throughout this case unless earlier terminated as provided herein, provided that Flushing Bank's interest in the Collateral is adequately protected; and

**WHEREAS,** the Debtor requires use of the Collateral and Cash Collateral in order to continue with its reorganization efforts herein in the interests of its creditors and estate; and,

**WHEREAS,** on August 20, 2024, the Debtor filed an Application for an Order Authorizing (i) the Use of Cash Collateral, Pursuant to 11 U.S.C. § 363(c)(2)(B) and (ii) Related Relief, together with all exhibits [ECF Doc. 20] together with an Affirmation of Attorney Pursuant to Local Bankruptcy Rule 9077-1 in support on an expedited hearing filed on August 21, 2024 [ECF Doc. 21] (collectively, the "Cash Collateral Motion"), on which a hearing was held on August 28, 2024 ("Interim Hearing"); and,

**WHEREAS,** at the Interim Hearing, the Court granted the Debtor interim use of cash collateral and scheduled a hearing on the final use of cash collateral to be held on October 15, 2024 at 10:00 a.m.; and,

**WHEREAS,** a hearing was held on October 15, 2024 ("Final Hearing") on the final use of cash collateral at which the Court granted the Debtor final use of cash collateral; and,

**WHEREAS,** this Stipulation and Order has been negotiated in good faith in further support of the Debtor's final use of cash collateral, is fair and reasonable under the circumstances and is in the best interests of the Debtor, its creditors and its estate at large.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED BY THE UNDERSIGNED PARTIES, AND SO-ORDERED BY THE COURT,** that:

1. **Incorporation of Recitals**. It is hereby represented by the parties that the Recitals set forth above are incorporated herein by reference and shall be deemed to be true and correct representations of the parties with respect to the statements therein as such statements apply to each or all the parties. Each of the parties to this Stipulation represents that it has the right and authority to execute this Stipulation and act in accordance with its terms.

2. **Final Use of Cash Collateral**. The Debtor is authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use Cash Collateral on an final basis in accordance with the Debtor's monthly Budget as follows:

Income (per month):

Rental revenue from 2281 Church Avenue, Brooklyn, NY:

| | |
|---|---|
| Unit 1 | $4,250 |
| Unit 2 | $4,000 |
| Unit 3 | $2,800 |
| Unit 4 | $2,500 |
| Unit 5 | $2,120 |
| Unit 6 | $1,900 |
| Unit 7 | $4,500 |
| TOTAL: | $22,070 |

**Total Income:**        **$22,070**

Expenses (per month):

| | |
|---|---|
| Salaries of non-executives/non-insiders – Manager/Supra of Property | $2,400<br>$600 per week for 4 weeks |
| Mortgage payments | $16,112.81<br>Monthly Mortgage to Flushing Bank on 1st mortgage lien on 2281 Church Avenue: $16,112.81 |
| Expenses, utilities | $3,100<br>$1,500 – NYC Water Board<br>$600 – National Grid<br>$1,000 – Credit Card Monthly Payments |
| TOTAL: | $21,612.81 |

| | |
|---|---|
| **Total Income:** | **$22,070.00** |
| **Total Expenses:** | **$21,612.81** |
| **NET INCOME (per month):** | **$457.19** |

The Debtor's inclusion of any amounts in the Budget neither constitutes an admission nor acknowledgment of Debtor's liability for such amounts nor shall it be deemed to give rise to the Debtor's obligation to pay such amounts (other than the Mortgage payment to Flushing Bank). Amendments to the Budget shall be subject to Secured Party's prior written approval. The Secured Party consents to the Debtor's use of Cash Collateral according to the terms of this Stipulation, specifically including:

a.    The Cash Collateral is, and for all purposes herein, will be deemed to constitute Cash Collateral in which the Secured Party has an interest under 11 U.S.C. §363(a)and (c)(2).

b.    The Debtor may use Cash Collateral of the Secured Party to pay for the ordinary and necessary post-petition operating expenses only as categorized and set forth in the Budget. Ordinary and necessary post-petition expenses shall be defined as those items set forth in the Budget and shall be amounts which do not exceed the amount specified therein for each category of expenses, subject to a line item variation of 10%, and, subject to subparagraph "d" below, the Debtor shall obtain Secured Party's

6

written permission before making or incurring any obligation or making or incurring any expenditures of Cash Collateral in excess of the amounts set forth herein. If such excess expenditure is approved, the Debtor shall also promptly provide Secured Party with copies of invoices paid with respect to such additional expenditures; provided, however, that in no event will any funds under this section whatsoever be paid hereunder to any persons or entities who are insiders of the Debtor as that term is defined by 11 U.S.C. §101(31).If the Debtor and Secured Party cannot reach an agreement with respect to whether the Debtor shall be allowed to use Cash Collateral for expenses not included in the categories included in the Budget, the Debtor may submit the matter to the Bankruptcy Court by motion for determination of the issue if the Secured Party fails to respond to a written request within five (5) days after such written request is received by Secured Party through its counsel (by email sent to the email addresses set forth below), or Secured Party denies a written request within five (5) days after such written request is received by Secured Party, through its counsel.

c.   No Cash Collateral shall be used in payment of any kind whatsoever to Debtor's officers, directors, shareholders, employees, relatives or any representatives or affiliates thereof, or any insiders as that term is defined by 11 U.S.C. §101(31), except as provided in the Budget.

d.   The Debtor shall maintain property, casualty, and liability insurance coverage as provided for in the Loan Documents in connection with the Collateral. Debtor shall promptly furnish Secured Party with proof of such insurance and the Debtor further agrees to provide Secured Party with prompt notice of any lapse or imminent lapse of insurance coverage. In the event that the insurance coverage for the Collateral is allowed to lapse for any reason, the Debtor agrees that Secured Party may, notwithstanding any applicable provision of the Bankruptcy Code, force-place insurance coverage. The Debtor further agrees that in the event that Secured Party is required to obtain force-placed insurance coverage, Secured Party may provide the Debtor with a demand to reimburse it for such coverage, and if, five (5) business days following the receipt of such notice, the Debtor has not reimbursed Secured Party for such insurance coverage, Secured Party may seek relief, on seven (7) business days' notice (to the Debtor, its counsel, the Office of the Trustee, all members of any Official Committee of Creditors herein, and all entities who filed a notice of appearance in this case, and any other representative of the Debtor or the Bankruptcy Estate appointed by the Court or otherwise in this Bankruptcy case), from the Bankruptcy Court, from the automatic stay of 11 U.S.C. §362(a) to commence and complete foreclosure of the Collateral.

      e.     On the 1st of each month, commencing in September 2024 and continuing thereafter, the Debtor shall remit monthly payments to Secured Party in the sum of nineteen  thousand one hundred eighty two dollars and two cents ($19,182.60) each, which constitutes the regular monthly mortgage payment under the Loan. The payments shall be remitted in the manner provided in the Loan Documents. Payments hereunder shall be applied by Secured Party in the manner provided for in the Loan Documents.

      f.     Without limiting the foregoing, the Debtor's right to use the Cash Collateral, and Secured Party's consent to use, is further conditioned upon the Debtor's maintenance of the Collateral in a commercially reasonable standard. To that end, the Debtor specifically covenants that the Debtor will not allow waste to occur with respect to the Collateral or any portion thereof or cause the Collateral to fall into disrepair.

2.     The Debtor shall maintain all revenue generated by the Collateral, which shall include all gross revenue and Cash Collateral existing as of the Petition Date consistent with the Debtor's existing cash management practices, or collected since the filing of this Chapter 11 Case, in its Debtor in Possession operating and tax accounts (the "DIP Accounts"), until as and when spent in accordance with its Budget and as otherwise set forth in this Stipulation and in other Orders of the Bankruptcy Court. Information regarding the DIP Accounts, including the bank's name, the address and the account numbers has already been provided to Secured Party by the Debtor. The Debtor agrees to disburse funds from the DIP Accounts only in accordance with the terms of this Stipulation, the requirements of the Bankruptcy Code, or other Orders of the Bankruptcy Court.

3.     The Debtor shall timely file all monthly operating reports with the Bankruptcy Court and the Office of the United States Trustee. The Debtor shall also provide Secured Party on or before the twentieth day of each month (or within 5 days thereafter, but in all events on the same day that these statements are filed with the Court, by email sent to Secured Party's counsel) with copies of all financial information and reports that the Debtor files with the Bankruptcy

Court. Further, the Debtor shall continue to provide all information to Secured Party as required by, and on the terms and conditions of, the Loan Documents and this Stipulation.

4.      Upon reasonable notice, but no less than three (3) business days written notice (by email sent to the Debtor's undersigned counsel), from Secured Party, the Debtor shall make the Collateral available to Secured Party for one or more physical inspections, at Secured Party's sole and absolute discretion, so that Secured Party may conduct and complete appraisals and environmental reviews, and analyses of any sort with respect to the current condition or prospective use of the Collateral. The Debtor shall cooperate fully with any such inspection of the Collateral.

5.      Nothing in this Stipulation shall constitute any commitment by Secured Party to make any additional loans or extend any further credit or other financial accommodations to or for the benefit of the Debtor.

6.      **Non-Consented Uses of Cash Collateral**. Secured Party does not consent to the use of any of the Cash Collateral other than as set forth in the Budget or to (i) investigate, assert, commence, prosecute or otherwise take any action with respect to any claim or alleged claim against Secured Party, including but not limited to, claims arising under sections 542 through and including 553 of the Bankruptcy Code; (ii) challenge the amount, validity, priority or enforceability of the Secured Party Debt or the security interests and liens of Secured Party in the Collateral or assert any defense, claim, counterclaim or offset with respect to Secured Party Debt or the security interests and liens of Secured Party; (iii) challenge in any manner whatsoever the Secured Party Debt and any other rights, claims and entitlements of Secured Party under any of the Loan Documents; (iv) change, amend or modify in any manner whatsoever any of the Loan Documents; or (v) seek the modification, amendment or vacatur of this Stipulation.

7.     **Events of Default/Termination Date.** Unless Secured Party otherwise agrees in writing, so long as Secured Party is owed money by the Debtor, this Stipulation shall terminate (the "Termination Date") upon the earliest of any of the following Events of Default: (a) an order is entered by the Bankruptcy Court granting a motion to convert the above-captioned case to a case under Chapter 7 of the Bankruptcy Code; (b) an Order is entered by the Bankruptcy Court granting any party relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession or other proceedings against their respective Collateral; (c) an order is entered by the Bankruptcy Court granting a motion to dismiss the above-captioned case; (d) an order is entered by the Bankruptcy Court granting a motion to appoint a trustee in the above-captioned case; (e) an order is entered reversing, revoking, modifying, amending, staying, or rescinding this order approving this Stipulation (other than entry of a Final Order); (f) the Debtor's failure to perform any of the obligations set forth in this Stipulation, which failure continues for more than five (5) business days following written notice thereof to the Debtor by Secured Party; (g) Debtor's failure to file a plan of reorganization agreed to by the Secured Party and reasonably anticipated to be confirmable, within six (6) months of the Petition Date; (h) filing of or support by Debtor for, or confirmation of, any plan of reorganization or liquidation in the Bankruptcy Case that (x)(i) has not been agreed to by the Secured Party in its sole discretion, or (ii) does not provide for the indefeasible payment in full in cash on the effective date of such plan of all of the Secured Party Debt (whether or not such amounts are allowed claims), or (y) provides for the sale of any of Debtor's assets pursuant to Section 363 of the Bankruptcy Code and does not preserve the right of the Secured Party to credit bid all or any portion of the Secured Party Debt at such sale; (i) any attempt by Debtor to obtain financing under Section 364 (c) or (d) of the Bankruptcy Code, which is claimed to be senior to or *pari passu* with the liens and

10

claim of Flushing Bank under the Loan Documents and this Stipulation; (j) any attempt by the Debtor to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to (x) invalidate, subordinate, recharacterize, reduce or otherwise impair the Flushing Bank Debt, the Collateral or the grant of security with respect thereto under the Loan Documents or (y) subject the Collateral to any surcharge pursuant to Section 506(c) of the Bankruptcy Code; (k) occurrence and continuance of a Default (other than any Default that shall exist as of the Petition Date) under and as defined in the Loan Documents beyond any applicable grace periods; and (l) in the event any Adequate Protection Lien shall cease to create a valid and perfected lien (with the priority required hereby) on and security interest in the Collateral purported to be covered thereby with the priority provided for herein. On the Termination Date, Secured Party's consent to use Cash Collateral shall be deemed withdrawn and, upon three (3) days' written notice to the Debtor of the occurrence of the Termination Date, the Debtor's use of Cash Collateral shall be deemed terminated, and the Debtor may not continue to use Cash Collateral except upon Secured Party's written consent or further order of the Court. Nothing contained herein shall be construed to preclude the Secured Party from filing a motion seeking relief from the automatic stay or from seeking any other appropriate relief in the Debtor's Chapter 11 Case at any other time during this case.

8.    **Grant of Replacement Liens**. The Debtor acknowledges that Secured Party is entitled to additional security to adequately protect Secured Party in the event that the Collateral decreases in value during the pendency of this Chapter 11 Case. In order to secure Secured Party so as to adequately protect it against any diminution in the value of the Collateral (including Cash Collateral), Secured Party is hereby granted a valid, binding, enforceable and perfected

continuing replacement priority lien and security interest (the "Replacement Liens") in and on any and all real and personal property, tangible and intangible, equipment, accounts receivable or rents of the Debtor, including all post-petition contract rights, agreements or the like, and all other assets of the Debtor and the proceeds thereof, of any kind or nature, wherever located, now owned or hereafter acquired, to the same extent, validity and priority held by the Secured Party on the Petition Date, whether or not constituting Collateral or post-petition collateral (collectively referred to herein as the "Estate Collateral") senior to all other liens against the Debtor's estate existing as of the Petition Date pursuant to 11 U.S.C. § 363. Such lien is subject only to: (i) the fees of the United States Trustee pursuant to 28 U.S.C. §1930(a)(g) and any applicable interest thereon, and fees payable to the Office of the Clerk of the Bankruptcy Court; (ii) the Carve-Out (as defined herein); and (iii) any valid, duly perfected, unavoidable liens existing at the time of the Petition Date, if any, having priority over the liens asserted by the Secured Party.

9.  **Grant of Adequate Protection Claim**. In addition to the Replacement Liens granted pursuant to this Stipulation to the extent of diminution in value of the Collateral by virtue of the use of Cash Collateral, the Secured Party is hereby granted an allowed administrative expense claim with priority over all administrative expense claims and unsecured claims against the Debtor, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code §§ 105, 326, 330, 331, 503(a), 503(b), 507(a), 546(c), 546(d), 1103, 1113 and 1114 (the "Adequate Protection Claim"), provided, however, that the Adequate Protection Claim shall be subject to the Carve-Out and shall not extend to any avoidance actions or claims or

12

causes of action under sections 11 U.S.C. §§ 544, 545, 547, 548, 549, 553 and the proceeds thereof (the "Avoidance Actions").

10.    **Carve-Out**. For purposes of this Stipulation, the term "Carve-Out" shall mean: (a) all fees required to be paid to the Clerk of the Bankruptcy Court during the Chapter 11 proceeding, (b) all fees payable to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, (c) reasonable fees and expenses incurred by a trustee appointed pursuant to section 726(b) of the Bankruptcy Code in an amount not exceeding $10,000.00 in the aggregate; (d) the allowed fees and expenses of professionals retained by Order of the Bankruptcy Court for Debtor and a Committee if one is appointed in the Bankruptcy Case in an amount not exceeding $25,000 in the aggregate; and (e) the allowed fees and expenses of the Subchapter V Trustee in an amount not exceeding $10,000 in the aggregate. The Debtor is authorized to use Cash Collateral to pay the Carve-Out; provided that Debtor's use of Cash Collateral to pay the fees and expenses of professionals retained by Debtor and the Committee is (i) subject to the entry of interim or final orders of the Court authorizing the payment of such fees and expenses, (ii) shall not exceed the sum of the dollar amount of such fees and expenses incurred prior to the occurrence of a Termination Event and not more than $2,500.00 incurred subsequent to the occurrence of a Termination Event, and (iii) shall not exceed the amounts specifically provided for under the Budget. The Carve Out shall be fully satisfied first from unencumbered cash, if any, before it can be paid from Cash Collateral or the Collateral. The Debtor shall reserve from its Cash Collateral sufficient sums in its Budget to satisfy the Carve Out, and absent the occurrence of a Termination Event and in amounts as provided for in the Budget, Secured Party hereby consents to such reserves. Nothing herein shall prohibit Secured Party or any party in

interest to review, and object to the amount and/or reasonableness of fees and expenses sought by the professionals retained in this Bankruptcy Case.

11.     The entry of this Stipulation is without prejudice to, and does not constitute a waiver of, expressly or impliedly, or otherwise impair, any of the rights, claims or privileges (whether legal, equitable or otherwise) of the Secured Party under the Bankruptcy Code or under non-bankruptcy law, including its right to seek relief from the automatic stay under Section 362 of the Bankruptcy Code in the event of any uncured default.

12.     The Debtor acknowledges and confirms that the Secured Party is oversecured. The Secured Party may continue to accrue interest, reasonable fees and expenses under 11 U.S.C. Section 506(b), as provided in the Loan Documents.

13.     Except as otherwise provided herein, the Debtor shall be enjoined and prohibited from, at any time during this Chapter 11 Case, granting security interests or liens in the Estate Collateral (including the Cash Collateral) or any portion thereof, to any other parties pursuant to Section 364(d) of the Bankruptcy Code or otherwise, which security interests or liens are senior to or on a parity with the security interests or liens of the Secured Party without order of the Bankruptcy Court after notice and hearing.

14.     The Debtor shall execute and deliver to the Secured Party all such agreements, financing statements, instruments and other documents as the Secured Party may reasonably request to evidence, confirm, validate or perfect its security interests and liens granted pursuant hereto.

15.     This Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests in and liens upon the property of the estate of the Debtor granted to the Secured Party as set forth herein, without the necessity of filing, recording

or serving any financing statements or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to the Secured Party in this Stipulation and the Loan Documents. If the Secured Party shall, in its discretion, elect for any reason to file any such security interests and liens, the Debtor is hereby authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the Secured Party's request and the filing, recording or service thereof (as the case may be) of such financing statement or similar documents shall be deemed to have been made at the time of and on the Petition Date. The Secured Party may, in its discretion, file a copy of this Stipulation in any filing or recording office in any County or other jurisdiction in which the Debtor has real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Stipulation.

16.    The Secured Party shall be entitled to the protection of Section 363(m) of the Bankruptcy Code with respect to diminution of Collateral in the event that the Collateral decreases in value during the pendency of this Chapter 11 Case, in the event that this Stipulation or any authorization contained herein is vacated, reversed or modified on appeal or otherwise by any court of competent jurisdiction.

17.    **Survival**. The provisions of this Stipulation shall survive entry of any order dismissing this case, converting the Debtor's Chapter 11 Case to one under Chapter 7, or which may be entered confirming or consummating any plan of reorganization of the Debtor's estate, and the terms and provisions of this Stipulation as well as the priorities in payment, liens, and security interests granted pursuant to this Stipulation shall continue in this or any superseding cases under the Bankruptcy Code, and such priorities in payment, liens and security interests

shall maintain their priority as provided by this Stipulation until all indebtedness due such Secured Party is indefeasibly satisfied and discharged. Nothing in this Stipulation shall, however, impair the provisions of Section 726(b) of the Bankruptcy Code.

18.     The Debtor warrants and represents to the Secured Party that its insurance policies (collectively, the "Policies") are in effect and that it will maintain casualty, liability and all other coverage. Without limiting the responsibilities or duties of the Debtor established by this Stipulation, the Bankruptcy Code, or otherwise, the Debtor shall timely pay all premium amounts for the Policies as they become due.

19.     Except as expressly provided herein, nothing herein shall be deemed to constitute the Secured Partys consent to the charging or assessment, pursuant to Sections 105 or 506(c) of the Bankruptcy Code or otherwise, against its respective collateral of any expenses of administration of the Bankruptcy Code or any future proceeding which may result from such case, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code other than the United States Trustee's quarterly fees and provision for the Carve-Out set forth in Paragraph 10 hereof, and no such consent shall even be implied from any other action, inaction or acquiescence by the Secured Party.

20.     **Binding Effect**. The provisions of this Stipulation shall inure to the benefit of Debtor and Secured Party and shall be binding upon Debtor and its successors and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of Debtor or with respect to property of the estate, whether under Chapter 11 of the Bankruptcy Code or in any subsequent Chapter 7 case, upon the United States Trustee and all creditors and parties in interest in the Bankruptcy Case.

21.     **Modification, Amendment or Vacatur of Stipulation**. In the event any or all the provisions of this Stipulation are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability of any lien, claim or priority authorized or created hereby. Any liens or claims granted to Secured Party hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Stipulation shall be governed in all respects by the original provisions of this Stipulation, including entitlement to all rights, remedies, privileges and benefits granted herein.

22.     **No Third-Party Rights**. Except as explicitly provided for herein, this Stipulation does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

23.     **No Liability to Third Parties**. In not objecting to Debtor's use of Cash Collateral under the terms set forth herein or in taking any other actions related to this Stipulation, the Secured Party (i) shall have no liability to any third party except to the extent permitted by law; and (ii) shall not owe any fiduciary duty to Debtor, its creditors or its estate. The Secured Party's relationship with Debtor shall not constitute or be deemed to constitute a joint venture or partnership with Debtor.

24.     **No Construction Against Draftsman**.  The provisions of this Stipulation shall be deemed to have been jointly drafted by the Debtor and the Lender and shall not be construed against a party because of its role in drafting this Stipulation.

25.     **No Waiver of Rights**. This Stipulation is without prejudice to the rights and remedies of the Office of the United States Trustee and without prejudice to the rights and remedies of a committee of unsecured creditors appointed in this case (the "Committee"), and if

no Committee is appointed, then any party in interest (other than the Debtor), to, within sixty

(60) days of the date this Stipulation is approved by the Bankruptcy Court, object to or challenge

(a) any findings of the Court herein, and/or (b) the validity, enforceability, priority or

effectiveness of any liens and claims of either of the Secured Parties, including, but not limited

to, claims under sections 506, 544, 547, 548, 550 and/or 552 of the Bankruptcy Code. Further,

nothing in this Stipulation shall prejudice Secured Party's rights under the Bankruptcy Code and

applicable non-bankruptcy law. In the event the Bankruptcy Case is dismissed, neither the entry

of this Stipulation, and all the rights and remedies of Secured Party hereunder or at law or in

equity shall remain in full force and effect as if such case had not been filed.

      26.     The Debtor shall, at its sole expense, seek Bankruptcy Court approval of this

Stipulation and Order.

      27.     Except as otherwise provided in this Stipulation, the terms and conditions of the

Loan shall remain in full force and effect, and the Secured Party shall have all the rights provided

therein, subject to the provisions of the Bankruptcy Code and any Orders of the Bankruptcy

Court.

      28.     The provisions of this Stipulation shall be binding upon the Debtor and its

respective successors and assigns, including any trustee hereinafter appointed in the within

Chapter 11 Case or any subsequent Chapter 7 case.

      29.     The Debtor, the Secured Party and all other parties are hereby authorized and

directed to execute all documents, notes, instruments, agreements and/or other items necessary to

carry out the purposes of this Stipulation and to take any action necessary or appropriate to

perfect liens created in this Stipulation.

30.    **Notices**. Any notices required to be given under this Stipulation shall be given by email transmission or Federal Ex overnight delivery as follows:

If to the Debtor, by email to Oswald David or by first class postage prepaid mail to:

Oswald David
1234 East 69th Street
Brooklyn, New York 11234

With a copy by email to:

Kamini Fox, PLLC
825 East Gate Blvd., Suite 308
Garden City, New York 11530
Tel.: (516) 493-9920
Fax: (516) 255-6905
kamini@kfoxlaw.com

If to Flushing Bank:

With a copy by email to:

Cullen and Dykman LLP
Bonnie Pollack, Esq.
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
Tel. (516) 296-9143
E.: bpollack@cullenllp.com

Any change of address, email or other contact information from the above, shall be set forth in writing by email and first-class postage prepaid mail sent to all other parties and their counsel hereto, and shall become effective and controlling after three (3) days following such service.

31.    **Execution in Counterparts**. This Stipulation may be executed in counterparts and by electronic signatures and each such counterparts and signatures shall be deemed to be an original, but all such counterparts shall together constitute but one and the same agreement.

32.     This Stipulation sets forth the entire agreement between the parties with respect to the matters stated herein and supersedes all prior discussions, negotiations and agreements, written or oral, and may not be modified except by a writing signed by the Debtor and the Secured Parties.

33.     This Stipulation shall be effective immediately upon approval by the Bankruptcy Court.

34.     **Retention of Jurisdiction**.  The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

35.     Debtor shall serve this Stipulation and Order on: (a) the Office of the United States Trustee for Region 2; (b) the Subchapter V Trustee Gerard R. Luckman, Esq. at Forchelli Deegan Terrana LLP, 333 Earle Ovington Blvd., Suite 1010, Uniondale, New York 11553, (c) the Debtor's twenty 20 largest unsecured creditors; (d) counsel to Flushing Bank, Cullen and Dykman, LLP, 333 Earle Ovington Blvd., 2nd Fl., Uniondale, New York 11553, Attn: Bonnie Pollack, Esq.; (f) counsel to Debtor's other secured creditors, if known; and (g) any such other party that requests notice pursuant to Bankruptcy Rule 2002, by regular mail no later than seven (7) days from the date of entry of this Stipulation and Order and file an affidavit of service attesting to same.

Dated: Garden City, New York
       October 21, 2024

CULLEN AND DYKMAN LLP

By: s/Bonnie Pollack
    Bonnie Pollack, Esq.
Kyriaki Christodoulou, Esq.
333 Earle Ovington Blvd. 2nd Floor
Uniondale, New York 11553
Tel.: (516) 296-9143
E.: bpollack@cullenllp.com

KAMINI FOX, PLLC

By:  /s/ Kamini Fox
     Kamini Fox
825 East Gate Blvd., Suite 308
Garden City, New York 11530
Tel.: (516) 493-9920
Fax: (516) 255-6905
kamini@kfoxlaw.com

kchristodoulou@cullenllp.com

*Counsel to Secured Party, Flushing Bank*       *Proposed Counsel to Debtor*

SO-ORDERED:



Dated: October 28, 2024
Brooklyn, New York

Jil Mazer-Marino
**United States Bankruptcy Judge**

**EXHIBIT C**



Cullen and Dykman LLP
The Omni Building
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
T: 516.357.3700
F: 516.357.3792

**Bonnie L. Pollack, Esq.**
*Partner*
*Direct Dial: (516) 296-9143*
*bpollack@cullenllp.com*

March 31, 2025

**VIA E-MAIL**

Kamini Fox, PLLC
<u>Attn</u>: Kamini Fox, Esq.
825 East Gate Boulevard, Suite 308
Garden City, New York 11530
E-mail: kamini@kfoxlaw.com

      Re:     Flushing Bank - 2281 Church Avenue LLC ("**Debtor**")
              <u>Case No. 24-43449 (JMM)</u>

Dear Ms. Fox:

As you know, my office represents Flushing Bank, N.A. ("Flushing"), secured creditor in the referenced chapter 11 bankruptcy case. Reference is made to the Stipulation and Order Authorizing Final Use of Cash and Other Collateral and Grant of Adequate Protection to Flushing Bank, entered by the bankruptcy court on October 28, 2024 (the "Cash Collateral Order"). On March 28, 2025, the Debtor filed an Amended Chapter 11 Plan (the "Plan"). Upon Flushing's review of the Plan, it advised your office of changes that would make the Plan acceptable to Flushing. You have stated that you will not make such changes and, as a result, the Plan is not acceptable to Flushing. In addition, the Plan does not provide that Flushing's claim will be paid in full on the effective date thereof, and does not provide Flushing with a right to credit bid on a sale of the Debtor's property.

In accordance with paragraph 7(g) and (h) of the Cash Collateral Order, Flushing no longer consents to the use of cash collateral and, on April 3, 2025, the right to use cash collateral will be deemed terminated. In addition, as you were advised in writing on March 25, 2025, the payment due Flushing for March 2025 has not yet been tendered and, pursuant to paragraph 7(f) of the Cash Collateral Order, on April 4, 2025, the right to use cash collateral will be deemed terminated on that basis as well.

Please be further advised that the Bank expressly reserves all its remedies, powers, rights, and privileges in connection hereto, and under the loan documents and the orders of the Bankruptcy Court, at law, in equity or otherwise. Please be guided accordingly. Thank you.

            Very truly yours,

            *Bonnie Pollack*
            Bonnie L. Pollack

# EXHIBIT D

## EXPENDITURE STATEMENT - 2281 CHURCH AVENUE LLC

**(1 ) 2281 CHURCH AVENUE BROOKLYN N.Y. 11226**

**(2) 1232 East 69th Street Brooklyn NY 11234**

**April 2025**

**Expenditure:**

**2281 Church Avenue Corporation: -**

| | |
|---|---|
| Mortgage Payment | 19,182.60 |
| Superintendent | 2,400.00 (Four weeks at $600.00 week) |
| Utilities – Gas and Oil | 4,700.00 |
| Water & Sewer | 1,000.00 |
| Con Edison -Lighting | 1,000.00 |
| Verizon & Cable | 265.00 |
| Accessories – (Garbage bags, Security, Cleaning, General maintenance) | 1,050.00 |
| Miscellaneous / Transp. Etc., | 500.00 |

**Total Expenditure 2281 Church Avenue Brooklyn     $30,097.60**

**Expenditure:**

**1232 East 69th Street Investment Property Under 2281 Church Avenue Corporation: -**

| | |
|---|---|
| Mortgage Payment | 3,357.11 |
| Heating | 1,020.00 |
| Water & Sewer | 300.00 |
| Repairs & Maintenance | 630.00 |

**Total Expenditure 1232 East 69th Street Brooklyn     $5,307.11**

**Total April 2025 Expenditure for Both Properties = $35,404.71**

# EXPENDITURE STATEMENT - 2281 CHURCH AVENUE LLC

## (1 ) 2281 CHURCH AVENUE BROOKLYN N.Y. 11226

## (2) 1232 East 69th Street Brooklyn NY 11234

### May 2025

**Expenditure:**

**2281 Church Avenue Corporation: -**

| | |
|---|---|
| Mortgage Payment | 19,182.60 |
| Superintendent | 3,000.00 (Five weeks at $600.00 week) |
| Utilities – Gas and Oil | 4,700.00 |
| Water & Sewer | 1,000.00 |
| Con Edison -Lighting | 1,000.00 |
| Verizon & Cable | 265.00 |
| Accessories – (Garbage bags, Security, Cleaning, General maintenance) | 1,550.00 |
| Shutters | 800.00 |
| Miscellaneous / Transp. Etc., | 500.00 |

**Total Expenditure 2281 Church Avenue Brooklyn**      **$32,097.60**


**Expenditure:**

**1232 East 69th Street Investment Property Under 2281 Church Avenue Corporation: -**

| | |
|---|---|
| Mortgage Payment | 3,357.11 |
| Heating | 1,020.00 |
| Water & Sewer | 300.00 |
| Repairs & Maintenance | 630.00 |

**Total Expenditure 1232 East 69th Street Brooklyn**      **$5,307.11**


**Total May 2025 Expenditure for Both Properties = $37,404.71**