UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
In re:

2281 CHURCH AVENUE LLC,

                Debtor.

---------------------------------------------------------X

Chapter 11
Case No. 24-43449-jmm

**DEBTOR'S REPLY TO SUPPLEMENTAL OBJECTION
TO CONFIRMATION OF SECOND AMENDED PLAN OF
REORGANIZATION BY FLUSHING BANK**

TO: THE HONORABLE JIL MAZER-MARINO
UNITED STATES BANKRUPTCY JUDGE:

2281 Church Avenue LLC, the debtor and debtor-in-possession herein ("Debtor"), by its attorney, Kamini Fox, PLLC, hereby submits this Reply ("Reply") to the *Supplemental Objection to Confirmation Of Second Amended Plan of Reorganization* ("Supplemental Objection") filed by Flushing Bank ("Flushing") on August 5, 2025 ("Objection") [ECF No. 95], and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Debtor filed its first Subchapter V Plan of Reorganization on November 15, 2025 [ECF No. 47], which was thereafter amended on January 17, 2025 [ECF No. 57], and further amended on March 28, 2025 [ECF No. 73] (collectively referred to as the "Plan").

2. Flushing Bank ("Flushing") holds a first mortgage lien against the Debtor's real property located at 2281 Church Avenue, Brooklyn, New York ("Church Ave. Property") in the approximate amount of $1,642,601.15 pursuant to its filed Proof of Claim No. 3 arising out of a Note and Mortgage granted by the Debtor to Flushing on or about January 26, 2018 ("Flushing Lien").

1

3. In connection with the Flushing Lien, Flushing had an appraisal conducted in 2018 to determine the value of the Church Ave. Property to ensure that there was sufficient value in the Church Ave. Property to protect its interest. Reference is hereby made to Exhibit A attached to Flushing's first Objection to Debtor's Plan [ECF No. 78], which is a copy of the appraisal conducted by Flushing Bank on June 13, 2017 ("Flushing Appraisal"). The Flushing Appraisal valued the Church Ave. Property at $4,100,000 as of June 13, 2017. *See* Ex. A, ps. 2 & 97 [ECF No. 78].

4. Despite Flushing's attempt to thwart this Court's view into thinking that the Plan contains provisions that "detrimentally" affect Flushing's rights, it is respectfully submitted that nothing in the Plan was changed with respect to Flushing's rights from its previous versions. *See* Plan, Art. III, B(i). The Debtor agreed to pay interest of 7% on Flushing's arrearage claim through the life of the plan even though the Note and Mortgage provides for an interest rate of 5.25% and agreed to pay Flushing's counsel's fees based upon the fact that Flushing is over-secured due to the valuation of the Church Ave. Property by the Debtor's real estate broker, Jackie Henry Realty, LLC ("Real Estate Broker").

5. It is respectfully submitted that Flushing is over-secured based upon its own appraisal of the Church Ave Property at $4,100,000 by at least $2,000,000 - $3,000,000 and therefore fully protected.

6. As this Court is aware, the only reason the Debtor was forced into this Chapter 11 Bankruptcy was because of the default judgments ("Cross Ellis Judgments") obtained by Calvin Cross and Tralon Ellis ("Judgment Creditors") and the imminent execution of same by the Sheriff against the Church Ave. Property. The Debtor's main goal in this Chapter 11 Bankruptcy Case is to resolve the Cross Ellis Judgments.

7. The Debtor has no intentions to challenge Flushing's Lien against the Church Ave. Property and/or not pay the Flushing Lien. Prior to the filing of the instant Chapter 11 Bankruptcy case, upon information and belief, the Debtor was never late on its payments to Flushing.

8. It should be further noted that the Debtor is current on its mortgage payments to Flushing through July 2025 as of the date of this Reply and only owes the August 2025 monthly mortgage payment.

9. It is also important to note that Flushing's counsel's fees are being paid by the Debtor based upon the significant equity in the Church Ave. Property. Therefore, there is zero detriment to Flushing and/or its counsel in over zealously litigating this case but there is to the Debtor.

**A. Plan's Feasibility**

10. While the Debtor's Plan may not be feasible in its current version, it was certainly proposed in good faith.

11. The difficulty presented with this case is that a decision on the appeal of the Cross Ellis Judgments from the Appellate Court is necessary before the Debtor can properly assess its options with respect to the funding of any proposed plan.

12. On May 6, 2025, the Debtor's appellate counsel, Arnold DiJoseph, Esq. ("DiJoseph"), argued the appeal to vacate the Cross Ellis Judgments in Appellate Division Second Department. As per the status letter regarding the appeal filed with this Court on May 19, 2025 [ECF No. 88], DiJoseph informed the Debtor that a decision regarding the appeal will take approximately 60-90 days from the May 6, 2025 argument date. As of the date of this Reply, it has been a little more than 60 days since the argument on appeal. As such, the Debtor and

DiJoseph believe that a decision on the appeal to vacate the Cross Ellis Judgments will be handed down any day.

13. The decision on the appeal is crucial to the Debtor's strategy on how to fund the Plan. Should the Debtor win the appeal and the Cross Ellis Judgments are vacated, then the Debtor does not have to make any payments on the Cross Ellis Judgments until their claims are litigated to a conclusion in the State Court. Should this occur, the Debtor's principal has sufficient personal funds to infuse into funding the Plan and make a 100% distribution to the remaining creditors and possibly have a structured dismissal of this Chapter 11 Case.

14. Should the Debtor lose the appeal to vacate the Cross Ellis Judgments, then the Debtor would be required to sell the 2281 Church Avenue, Brooklyn, NY property ("Church Ave Property"). At that time, the Subchapter V trustee, Gerard Luckman ("Trustee") will coordinate with the Debtor to select a real estate broker and determine a reasonable listing price of the Church Ave Property in its "as is" condition. The net sale proceeds from the sale of the Church Ave Property will then be used to fund the Plan and pay all creditors 100%.

**B. Debtor's Net Monthly Income**

15. Flushing accurately stated that the Debtor's current cash flow as demonstrated by its monthly operating reports is insufficient to make the proposed scheduled payments under the proposed Plan.

16. The Debtor's gross monthly income from the Church Ave Property has significantly decreased as a result of (a) one tenant vacating the premises without paying rent which it failed to pay since the pandemic, and (b) another (the real estate company), not making any rental payments since August 2024 due to the Marshal notifying all tenants of the Church

Ave Property to stop paying rent as part of his attempts to sell the property executing the Cross Ellis Judgments.

17. Debtor is in the process of retaining a landlord-tenant attorney to evict the real estate tenant but is holding off until it receives the decision on the appeal of the Cross Ellis Judgments. Debtor is not seeking to re-let the vacant spaces since it may become necessary for Debtor to sell the Church Ave Property should the Debtor lose the appeal and is required to pay the Cross Ellis Judgments.

### C. Debtor is Not in Violation of Cash Collateral Order and Provided Proof of Insurance

18. With respect to Flushing's argument that the Debtor is in default under the Cash Collateral Order, it is respectfully submitted that all funds being received from the tenants of the Church Ave Property are being paid to Flushing in the form of the regular monthly mortgage payment on its Lien as adequate protection payments. As a matter of fact, upon information and belief, Debtor's principal infuses his own personal funds every month to compensate for the difference in the lack of funds necessary to make the regular monthly mortgage payment of $19,182.60 to Flushing every month. As such, it is respectfully submitted that the Debtor has not violated the Cash Collateral Order as the income being generated from the Church Ave Property is not being used to pay any other expense related to said property and is being "turned over" to Flushing.

19. In addition to the two (2) tenants not paying rent on the Church Ave Property, the paying tenants make their rental payments late. As a result, the Debtor pays the monthly mortgage payment late every month to Flushing.

20. With respect to the insurance on the Church Ave Property, on July 25, 2025, Debtor's counsel emailed proof of general liability and real property insurance to Flushing's attorney, and on July 31, 2025, emailed same to the United States Trustee.

21. Debtor experienced difficulty at first in obtaining insurance which resulted in a lapse of insurance from May 24, 2025 through July 24, 2025. The Debor was however successful in obtaining same and promptly provided proof to Flushing's counsel.

### D. Sale of the 2281 Church Avenue Property

22. As this Court is aware, the Debtor retained the Real Estate Broker to market and sell the Church Ave. Property. The listing price was $15,000,000 based upon a redevelopment of the property as a residential high rise under the current zone of C4-4A of the property.

23. The Real Estate Broker listed the Church Ave Property on various platforms, including LoopNet. Although there were showings and one interested buyer, no offers have been received to date and the listing with Henry Realty has expired on July 31, 2025.

24. The Debtor made the decision to not re-list the Church Ave Property at this time until it receives a decision on its appeal of the Cross Ellis Judgments from the Appellate Court, which is expected to be received any time now. Once a decision is received, the Debtor will know whether it needs to sell the property or not based upon the decision.

### E. Flushing's Right to Credit Bid

25. The Debtor has no objections to Flushing's right to credit bid its debt under 11 U.S.C. § 363(k).

26. Once a decision is issued with respect to the appeal of the Cross Ellis Judgments, the Debtor will further amend its Plan which will, among other things, give Flushing the right to credit bid.

27. Again, most of the arguments in this Supplemental Objection have been previously raised by Flushing and were responded to by Debtor. As Debtor stated in its previous Reply to Flushing's original Objections, the Debtor intends on paying Flushing's lien in full on the sale of the Church Ave Property.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court adjourn the confirmation hearing until a decision on the appeal of the Cross Ellis judgments is received by the Debtor from the Appellate Court Second Department and grant such other relief as this Court deems appropriate under the circumstances.

Dated: Garden City, New York  
      August 7, 2025

**KAMINI FOX, PLLC**

By: */s/ Kamini Fox*  
Kamini Fox  
825 East Gate Blvd., Suite 308  
Garden City, New York 11530  
Phone: (516) 493-9920  
kamini@kfoxlaw.com

*Counsel to the Debtor and Debtor in Possession*