UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

2281 CHURCH AVENUE LLC,

      Debtor.

---------------------------------------------------------X

Chapter 11
Case No. 24-43449-jmm
(Subchapter V)

**DEBTOR'S OPPOSITION TO MOTION FOR
ENTRY OF AN ORDER CONVERTING CHAPTER 11 CASE
TO CHAPTER 7, AND FOR TURNOVER OF CASH COLLATERAL**

TO: THE HONORABLE JIL MAZER-MARINO
   UNITED STATES BANKRUPTCY JUDGE:

2281 Church Avenue LLC, the debtor and debtor-in-possession herein ("Debtor"), by its attorney, Kamini Fox, PLLC, hereby submits this Opposition ("Opposition") to the *Motion For Entry Of An Order Converting Chapter 11 Case To Chapter 7, And For Turnover Of Cash Collateral* filed by secured creditor, Flushing Bank ("Flushing") dated August 11, 2025 [ECF No. 101] seeking the entry of an order (i) converting this case to one under Chapter 7 of the Bankruptcy Code, and (ii) compelling turnover of all of Flushing's cash collateral improperly used by the Debtor ("Motion"), and respectfully represents as follows:

## BACKGROUND

1. On August 19, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 Subchapter V of the Bankruptcy Code in the Eastern District of New York, Brooklyn Division (the "Chapter 11 Case").

2. The Debtor remains in possession of its assets and continues to manage its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On August 20, 2024, the United States Trustee appointed Gerard R. Luckman, Esq. (the "Subchapter V Trustee") to serve as Subchapter V trustee in this Chapter 11 Case

1

pursuant to § 1183(a) of the Bankruptcy Code and has qualified and served in that capacity. No examiner or official committee has been appointed heretofore.

4. The Debtor is a real estate holding company and its only assets consist of the following two (2) real properties:

    a. 2281 Church Avenue, Brooklyn, New York 11226 ("Church Avenue Property"); and,

    b. 1232 East 69th Street, Brooklyn, New York ("69th Street Property").

5. The Debtor filed its first Subchapter V Plan of Reorganization on November 15, 2024 [ECF No. 47] ("First Plan"), which was thereafter amended on January 17, 2025 [ECF No. 57], and further amended on March 28, 2025 [ECF No. 73] ("Second Plan") (First Plan and Second Plan collectively referred to as the "Plan").

6. On April 22, 2025, Flushing filed its first objection to the Plan [ECF No. 78] ("Original Objection") based upon lack of feasibility among other things.

7. On August 5, 2025, Flushing filed its second objection to the Plan [ECF No. 95] ("Supplemental Objection") based upon lack of feasibility among other things.

8. The Debtor requested several adjournments of the Confirmation Hearing on the Plan to allow it to receive a decision on the appeal of the Cross Ellis Judgments ("Appeal") in the action entitled *Calvin Cross and Tralon Ellis v. Woodbine Caterers d/b/a Woodbine Ballroom, 2281 Church Ave LLC et al.* bearing Index No. 516493/2018 ("State Court Action").

9. On September 10, 2025, the Supreme Court of the State of New York, Appellate Division: Second Judicial Department issued the decision on the Appeal in favor of the plaintiffs in the State Court Action and against the Debtor and other defendants ("Appellate Decision").

Now that the Debtor has lost the Appeal, it has a clear path on how to fund its proposed Plan, which is to sell the Church Avenue Property.

10. The Church Avenue Property is subject to three (3) liens which total approximately $2,502,661.40 as follows: (a) the Flushing Lien of approximately $1,642,601.15 (as described below); (b) judgment lien obtained by Calvin Cross in an approximate amount of $529,267.99 (judgment amount of $430,500) plus interest accruing at 9% ("Calvin Judgment"); and (c) judgment lien obtained by Tralon Ellis in an approximate amount of $330,792.49 (judgment amount of $269,062.50) with interest accruing at 9% ("Ellis Judgment") (Calving Judgment and Ellis Judgment collectively the "Cross Ellis Judgments").

**A. Flushing's Lien**

11. Flushing holds a first mortgage lien against the Church Avenue Property in the approximate amount of $1,642,601.15 pursuant to its filed Proof of Claim No. 3 arising out of a Note and Mortgage granted by the Debtor to Flushing on or about January 26, 2018 ("Flushing Lien").

12. As security for payment of the Note, the Debtor executed and delivered to Flushing a certain Mortgage, Security Agreement and Assignment of Leases and Rents dated January 26, 2018 (the "Mortgage", together with the Note, the "Loan Documents. The Mortgage granted Flushing a lien against the Church Avenue Property, and a security interest in and lien on all of the Debtor's personal property and business assets, including, without limitation, deposit accounts, all of its machinery and equipment, inventory, accounts (including accounts receivable), documents, chattel paper, investment property, instruments, general intangibles, all rents, issues and profits, the rights in or the proceeds of any fire and/or hazard insurance policy, ledgers and records, and all other property defined and described as Collateral therein, whether

then owned or thereafter acquired, together with all products and proceeds thereof (collectively, the "Collateral").

13. Flushing perfected its first priority security interest in and to the Collateral by filing a UCC-1 Financing Statement ("UCC-1") in the Office of the New York Department of State on March 6, 2018 as Filing No. 201803060107837 and a continuation on October 18, 2022 as Filing No. 202210180436225.

14. In connection with the Flushing Lien, Flushing had an appraisal conducted in 2018 to determine the value of the Church Avenue Property to ensure that there was sufficient value in said Property to protect its interest. Reference is hereby made to Exhibit A attached to Flushing's first Objection to Debtor's Plan [ECF No. 78], which is a copy of the appraisal conducted by Flushing on June 13, 2017 ("Flushing Appraisal").

15. The Flushing Appraisal valued the Church Avenue Property at $4,100,000 as of June 13, 2017. *See* Ex. A, ps. 2 & 97 [ECF No. 78].

16. It is respectfully submitted that pursuant to the Loan Documents, Flushing has no right to a full satisfaction of its Lien at this time. The Debtor continues to pay Flushing its regular monthly mortgage payment post petition although late every month and proposes to cure the arrears in full through the Plan with interest at 7%. As such, Flushing is fully protected.

**B. Use of Cash Collateral**

17. On October 28, 2024, this Court entered a Stipulation and Order Authorizing Final Use of Cash and Other Collateral and Grant of Adequate Protection to Flushing Bank ("Cash Collateral Order") [ECF No. 42], which terms the Debtor and Flushing negotiated and consented to.

18. Pursuant to the Cash Collateral Order, the Debtor agreed and acknowledged that Flushing holds a valid, perfected and enforceable first priority lien on the Collateral, including but not necessarily limited to all proceeds derived therefrom (collectively, the "Pre-Petition Collateral"), which Pre-Petition Collateral secures Flushing's claims, pursuant to and in accordance with Loan Documents. [*See* ECF No. 42, pg. 3].

19. Pursuant to paragraph 2 of the Cash Collateral Order, the projected income and expenses of the Church Avenue Property are as follows, identifying the source of post petition payment:

| Income (Rent) | Expenses | | Source of Payment Post-Petition | |
|---|---|---|---|---|
| | Salaries of non-executives/non-insiders | 2,400 | Not Being Paid | |
| | Manager/Supra of Property | 1,200 ($600 per week) | Debtor | |
| | Mortgage payments | 16,112.81 To Flushing Which amount increased to $19,182.60 | Debtor (partially) | |
| | Expenses, utilities | $1,500 NYC Water Board $600 National Grid $1,000 Credit Card Payments | | Principal |
| | Total | $21,612.81 | $20,382.60 | |
| Total: 22,070 | | | | |

20. The Source of Payment Post Petition column was specifically added to address Flushing's demand for turnover of its Cash Collateral improperly being used by the Debtor. As can be seen from the above chart, the Debtor does not generate sufficient cash on a monthly basis

5

to carry its operating expenses and relies heavily on its principal to fund its operations. As such, there is no excess cash collateral to turnover to Flushing.

**RELIEF REQUESTED SHOULD BE DENIED**

21. Pursuant to Section 1112(b) of the Bankruptcy Code, a court can dismiss or convert a chapter 11 case "for cause" if it is in best interests of creditors and the estate. COLLIER ON BANKRUPTCY ¶ 111.04 (16th ed. 2009).

22. Section 1112(b) of the Bankruptcy Code provides that:

> 1) . . . on request of a party in interest and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . .
>
> 2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-
>
>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>>
>> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)-
>>> (i) for which there exists a reasonable justification for the act or omission; and
>>> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(1) and (2).

23. Section 1112(b)(4) identifies sixteen (16) factors which may constitute "cause" to convert a chapter 11 case to one under chapter 7, three of the first four (4) of which were identified by Flushing as relevant in this case, as follows:

> (A) Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) Gross mismanagement of the estate;
> (C) Failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) Unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> . . .

11 U.S.C. § 1112(b)(4).

24. The above list "is 'not exhaustive' and courts are free to consider other factors." *In re Elmwood Ventures LLC*, No. 25-10932 (MG) 2025, at *5 Bankr. LEXIS 2244 (Bankr. S.D.N.Y. 2025); *see also In re Ameribuild Constr. Mgmt. Inc.*, 399 B.R. 129, 131 n. 3 (Bankr. S.D.N.Y. 2009).

25. The movant bears the burden of establishing cause by a preponderance of the evidence, which if established then shifts the burden to the debtor to establish that there exists "unusual circumstances" preventing conversion or dismissal. *In re McTiernan,* 519 B.R. 860, 864 (Bankr. D. Wyo. 2014).

26. "Bankruptcy judges have wide discretion to determine whether cause exists to dismiss or convert a case under section 1112(b)." *In re Elmwood Ventures LLC*, No. 25-10932 (MG) 2025, at *5.

27. Based upon the foregoing, it is respectfully requested that this Court deny Flushing's Motion to convert this case to one under Chapter 7 as there exists unusual circumstances which delayed the Debtor's sale of the Church Avenue Property to fund its Plan.

### i. Debtor Has A Reasonable Likelihood of Reorganizing Despite Experiencing Substantial and Continuing Losses

28. It is respectfully submitted that this Court consider all relevant information pertinent to this case, such as the Debtor's appeal of the Cross Ellis Judgments and the financial prospects of the Debtor to successfully reorganize and emerge from this case based upon the substantial equity in both the Church Avenue Property and the 69th Street Property beyond all liens on said properties.

29. The Debtor does not contest that it is operating at a loss every month which is reflected in its monthly operating reports. As this Court is aware, the only reason the Debtor was forced into this Chapter 11 Bankruptcy was because of the Cross Ellis Judgments and the imminent execution of same by the Sheriff against the Church Avenue Property. The Debtor's main goal in this Chapter 11 Bankruptcy Case is to resolve the Cross Ellis Judgments, which this Chapter 11 Case allowed it to accomplish.

30. As discussed above, the Debtor was able to successfully complete its appeal to vacate the Cross Ellis Judgments. The decision on the appeal was crucial to the Debtor's strategy on how to fund the Plan. Unfortunately, the Debtor lost the appeal and thus must sell the Church Avenue Property to fund the Plan.

31. As stated above, the total liens against the Church Avenue Property are estimated at $2.6M while the value is estimated at approximately $10M.

32. The Debtor's real properties both consist of substantial equity, especially the Church Avenue Property, which if sold, will generate more than sufficient funds to make a 100% distribution to all creditors with the Debtor receiving a surplus.

33. A conversion of the case to Chapter 7 will lead to a loss of the substantial equity cushion as a chapter 7 trustee will most likely conduct an auction sale of the Church Avenue

Property receiving significantly less than its true value, and most of the equity cushion will dissipate due to administrative fees by the trustee and his/her professionals.

34. It is respectfully submitted that this Court allow the Debtor to market and sell the Church Avenue Property through its real estate broker using the net sale proceeds to fund its Plan which is in the best interests of all creditors and the estate rather than convert this case to one under Chapter 7.

### ii. Debtor Has Maintained Appropriate Insurance

35. Contrary to Flushing's allegations in their Motion [¶ 28], the Debtor has continuously maintained appropriate insurance on the Church Avenue Property, except for a lapse which occurred during the period of May 24, 2025 through July 24, 2025.

36. Debtor's counsel explained to Flushing's counsel that the Debtor experienced difficulty at first in obtaining insurance which resulted in the lapse of insurance. However, the Debtor was successful in obtaining insurance and promptly provided proof of same to Flushing's counsel on July 31, 2025.

### iii. Debtor's Use of Cash Collateral

37. With respect to Flushing's allegation that the Debtor is in default under the Cash Collateral Order, it is respectfully submitted that all funds being received from the tenants of the Church Avenue Property are being paid to Flushing in the form of the regular monthly mortgage payment on its Lien as adequate protection payments. As a matter of fact, Debtor's principal infuses his own personal funds every month to compensate for the difference in the lack of funds necessary to make the regular monthly mortgage payment of $19,182.60 to Flushing every month. As such, it is respectfully submitted that the Debtor has not violated the Cash Collateral

Order as the income being generated from the Church Ave Property is not being used to pay any other expense related to said property and is being "turned over" to Flushing.

38. As reflected in the monthly operating reports filed to date by the Debtor through June 2025, the Debtor experiences a negative cash flow on a monthly basis which resulted from: (a) vacatur of one (1) tenant of the premises, (b) failure of another tenant in paying any rent since August 2024 in the monthly amount of $2,800, and, (c) the continuous failure of the other paying tenants to actually pay the rent on time every month. For example, in the month of June 2025, the Debtor received income of $6,650.00 [Cash Collateral] from the Church Avenue Property, $15,420 less than the projected income in the Cash Collateral Order.

39. Flushing alleges that the reason it terminated the Debtor's use of cash collateral was because it did not like the terms of the Debtor's Plan. [See ¶ 30

40. If, as demanded by Flushing, the Debtor ceases to use the monies generated from the Church Avenue Property [Cash Collateral] in the form of rental income, the Debtor will certainly default on the monthly payments to Flushing. Based upon Flushing's actions to date in this Chapter 11 Case, it can be gleaned that it is Flushing's intention to force the Debtor to default on its mortgage payments to it so that Flushing may seek to lift the automatic stay and foreclose on the Church Avenue Property.

41. Contrary to Flushing's demand for turnover of Cash Collateral, there are no Cash Collateral to be turned over to Flushing. All monies generated from the Church Avenue Property are being used to maintain said property for the benefit of Flushing and/or to pay Flushing its adequate protection payments in the form of the monthly mortgage payments and the operating expenses associated with the property.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court deny Flushing's motion seeking to (a) convert this case to one under Chapter 7 of the Bankruptcy Code, and (b) compel turnover of its cash collateral allegedly improperly used by the Debtor, and (c) granting such other relief as this Court deems appropriate under the circumstances.

Dated: Garden City, New York
October 1, 2025

**KAMINI FOX, PLLC**

By: */s/ Kamini Fox*
Kamini Fox
825 East Gate Blvd., Suite 308
Garden City, New York 11530
Phone: (516) 493-9920
kamini@kfoxlaw.com

*Counsel to the Debtor and Debtor in Possession*