CULLEN AND DYKMAN LLP
The Omni Building
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
(516) 357-3700
Bonnie L. Pollack, Esq.
Kyriaki Christodoulou, Esq.
bpollack@cullenllp.com
kchristodoulou@cullenllp.com

*Counsel for Flushing Bank*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| 2281 CHURCH AVENUE LLC | : | Case No. 24-43449 (JMM) |
| | : | |
| Debtor. | : | |

------------------------------------------------------------- x

**REPLY TO DEBTOR'S OPPOSITION TO AND IN FURTHER SUPPORT OF FLUSHING'S MOTION FOR ENTRY OF AN ORDER CONVERTING CHAPTER 11 CASE TO CHAPTER 7, AND FOR TURNOVER OF CASH COLLATERAL**

Flushing Bank ("Flushing"), by and through its counsel Cullen and Dykman LLP, hereby submits this reply ("Reply") to 2281 Church Avenue LLC's ("Debtor") opposition (the "Opposition") dated October 1, 2025 (Dkt. No. 105) to, and in further support of, its *Motion For Entry Of An Order Converting Chapter 11 Case To Chapter 7, And For Turnover Of Cash Collateral* (the "Motion"[1]) dated August 11, 2025 (Dkt. No. 101). In support of its Reply, Flushing respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. This case was filed 14 months ago. In that time, the Debtor has operated at a substantial loss every month except one, and the payments required to be made to Flushing, its

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

1

mortgagee, have been significantly late each month.[2] The Debtor has filed two chapter 11 plans both of which have not a shred of financial feasibility. It is obvious to anyone, perhaps save the Debtor, that the only way to pay its creditors is to sell the Church Ave. Property. Indeed, the Debtor made a specious attempt to do so over the summer, when it hired a broker with no experience in commercial real estate, who listed the Church Ave. Property for a sale price of $15 million, which was $11 million higher than Flushing's last appraisal. Of course, nothing materialized from that listing. All of this led to the only alternative in Flushing's estimation, filing the Motion to convert this case and have a trustee appointed to sell the Church Ave. Property given the Debtor's lack of proclivity to do so itself.

2. More than a month after receiving the Motion, the Debtor's counsel contacted Flushing's counsel, writing that "it would be great if you would work with us to get your client paid through a smooth process." This ignores that Flushing repeatedly *tried* to do just that, to no avail. Nevertheless, counsel did confer and agreed in principle on an arrangement where the Church Ave. Property would be listed for no more than $10 million and if there was no contract within 90 days, an auction sale would occur within 30 days. Unsurprisingly, Debtor's counsel has still not been able to obtain her client's consent to this arrangement, further demonstrating that a chapter 7 trustee is essential in this case.

3. In tandem with those discussions, the Debtor filed the Opposition. The Opposition confirms, rather than refutes, the grounds for conversion: (1) the Debtor admits experiencing continuing monthly losses; (2) the Debtor admits a two-month lapse of property insurance; (3) the Debtor admits it has been consistently late on mortgage payments and relies on insider

---

[2] The failure to make timely payments is an event of default under the mortgage which would, indeed, allow Flushing to pursue foreclosure outside of bankruptcy despite the Debtor alleging the contrary in paragraph 16 of the Opposition.

infusions to operate; and (4) the Debtor does not dispute Flushing's termination of consensual Cash Collateral use under the Cash Collateral Order, yet continues to operate and dissipate Cash Collateral without having obtained renewed consent or court authorization.

4.     The Debtor once again states that it intends to sell the Church Ave. Property—something it previously rebuffed and, apparently, is still not taking seriously—without any credible timetable, marketing process, or ability to maintain operations in the interim, and without responding to the proposed terms negotiated between counsel to do so. And, like the many inconsistencies in the Debtor's prior pleadings, at times the Debtor still suggests that it will not pay Flushing through a sale (even though it is painstakingly obvious that the proposed plan is not otherwise feasible). *See*, Opposition, ¶16.

5.     The Opposition notwithstanding, cause exists under § 1112(b)(4)(A), (C) and (D) to convert this chapter 11 case. Conversion—not dismissal—is in the best interests of creditors so a chapter 7 trustee can promptly take control, stop the losses and conduct a sale process that protects all constituencies.

## ARGUMENT

### A.  Cause Exists Under § 1112(b)(4)(A): Continuing Losses and No Reasonable Likelihood of Rehabilitation

6.     As set out in Flushing's Motion and the Debtor's monthly operating reports, the Debtor has operated at a loss in all but one month since filing, with ongoing negative cash flow. The Opposition (¶¶ 28–30, 38) concedes the losses.

7.     The Debtor's feasibility narrative has only deteriorated. It:

- admits reliance on monthly insider infusions to make ordinary payments (Opp. ¶¶ 20, 37), which cannot support feasibility under § 1129(a)(11);
- remains chronically late on postpetition mortgage payments and, upon information and belief, is currently unpaid for September and October 2025;

- previously took the Church Ave. Property off the market (Motion ¶ 11), and now, after losing the Cross/Ellis appeal (Opp. ¶ 9), pivots back to a sale concept without specifics, timeline, or a binding contract.

8. Furthermore, the appeal outcome does not help feasibility. The adverse appellate decision increases, not decreases, the burden on feasibility. Even before that decision, the Debtor's plan projections overstated gross revenue by more than $10,000/month compared to the Cash Collateral Order (Motion ¶¶ 22–24). The Opposition provides no updated operating budget, no cure of plan defects, and no credible path to rehabilitation, but only a suggestion of a sale without details or a concrete strategy.

9. The Debtor argues that a conversion "will lead to a loss of the substantial equity cushion as a chapter 7 trustee will most likely conduct an auction sale…receiving significantly less than its true value, and most of the equity cushion will dissipate…" (Opp. ¶ 33). However, this argument is not a substitute for feasibility. The Debtor's unsubstantiated $10 million value claim (Opp. ¶ 31) is contradicted by Flushing's 2017 appraisal at $4.1 million and by the Debtor's failure to produce a current appraisal. In any event, the statute asks whether there is a reasonable likelihood of rehabilitation (*see* in part, 11 U.S.C. § 1112(b)(4)(A); *see also In re Gateway Access Solutions, Inc.,* 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007)), and clearly, under the proposed scheme, there is not.

**B. Cause Exists Under § 1112(b)(4)(D): Failure to Maintain Uninterrupted Insurance Coverage**

10. Under section 1112(b)(4)(C) of the Bankruptcy Code, failure to maintain appropriate insurance is also grounds for conversion of a case. As the Debtor concedes, the Debtor in fact did have a lapse in insurance. The Debtor's insurance policy with respect to the Property that was in effect on the Petition Date expired on May 24, 2025. (Opp. ¶ 35). After several communications to Debtor's counsel requesting renewal of the policy, it was finally

provided to Flushing on July 24, 2025. However, for the period between May 24, 2025 through and including July 24, 2025, during which there was this lapse of coverage, insurance was force placed by Flushing, at its own cost and expense. *See*, Exhibit "B" to Motion.

    **C.    Cause Exists Under § 1112(b)(4)(D): Unauthorized Use of Cash Collateral**

11.    Under paragraph 7(g) and (h) of the Cash Collateral Order, Flushing's consent to the use of Cash Collateral terminated when the Debtor filed a plan not acceptable to Flushing. On March 31, 2025, the Debtor was advised of the termination of the use of Cash Collateral as of April 4, 2025, based on the foregoing default (Motion ¶ 30, Ex. A, C).

12.    Notwithstanding the termination, the Debtor continued expending Cash Collateral after April 4, 2025 without Flushing's consent or a further Court order, including at least $10,915 in April and $12,915 in May, exclusive of mortgage payments (Motion ¶ 30–31, Ex. D). Section 363(c)(2) of the Bankruptcy Code prohibits such use.

13.    The Debtor's arguments respecting cash collateral fail. The assertion that "all funds are being turned over to Flushing" (Opp. ¶¶ 37, 41) misses the point: once consent is terminated, no Cash Collateral can be used for any purpose absent consent or order. Nor is that true; according to the Debtor, the superintendent is being paid from the rents. Furthermore, the fact that the cash collateral is being used to maintain the Church Ave. Property is irrelevant. Cash Collateral may not be used. Period. The suggestion that Flushing is "forcing a default" (Opp. ¶ 40) is likewise baseless; Flushing is merely enforcing the negotiated Cash Collateral Order. If the Debtor required continued use, it should have sought court authorization, which it did not.

    **D.    The Debtor Fails to Establish "Unusual Circumstances" Under § 1112(b)(2)**

14.    Even when cause is established, section 1112(b)(2) provides a narrow exception allowing courts to deny conversion or dismissal if they find and specifically identify unusual

5

circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate and the debtor establishes both that: (1) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of the Bankruptcy Code, or if such sections do not apply, within a reasonable period of time; and (2) reasonable justification exists for the acts or omissions causing the grounds for relief, and such acts will be cured within a reasonable time. *See* 11 U.S.C. § 1112(b)(2); *In re Ghatanfard*, 666 BR 14, 24-25 (Bankr. S.D.N.Y. 2024) ("even if a court identifies cause, 'the Court may deny a motion to convert or dismiss if (i) it finds and specifically identifies 'unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and the estate' and (ii) the debtor or any other party in interest establishes that the requirements of 11 U.S.C. § 1112(b)(2)(A) and (B) have been met.'") (quoting *In re Adamo*, No. 14-73640, 2016 WL 859349, at *9 (Bankr. E.D.N.Y. Mar. 4, 2016) (quoting 11 U.S.C. § 1112(b)(2)).

15. Bankruptcy courts apply this exception restrictively. As the court in *In re Van Eck* emphasized, the Code does not define unusual circumstances; however, courts have determined that it contemplates conditions that are not common in most chapter 11 cases. *In re Van Eck*, 425 BR 54, 63 (Bankr. D. Conn. 2010); *In re Ghatanfard*, 666 BR at 25. The burden of proving unusual circumstances falls on the debtor to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. *Id.*

16. The *Ghatanfard* debtor argued that there were unusual circumstances such that the case should not be converted, including that an appeal before the Second Circuit had been expedited and could have resulted in the judgment being vacated, and that the case was a subchapter V case. *In re Ghatanfard*, 666 BR at 25. However, the *Ghatanfard* court noted that

the debtor failed to explain why those factors were unusual and warranted exceptions and further noted that case and statutory law supported that those factors did not defeat conversion. *Id.*; *see also In re BH S & B Holdings, LLC*, 439 B.R. 342, 350 (Bankr. S.D.N.Y. 2010) ("[C]ase law is clear that the mere hope of prevailing on potential litigation claims is not a sufficient basis to defeat a showing of cause to convert."); *In re Carrington*, 710 F. Supp. 3d 248, 259 (S.D.N.Y. 2024) (bankruptcy court found there were no unusual circumstances although debtor asserted she was emotionally, physically, and financially exhausted, and such exhaustion supported debtor's inability to fulfill duties under chapter 11), appeal dismissed, No. 23-7433, 2024 WL 3491202 (2d Cir. May 3, 2024).

17. Similarly, in the instant case, the fact that the Debtor appealed the Cross/Ellis Judgment does not constitute unusual circumstances. As demonstrated by the foregoing case law, the hope of prevailing on potential litigation claims (and as it turns out, unsuccessful litigation claims), is not sufficient to defeat a showing of cause to convert.

18. The Debtor does not specifically identify unusual circumstances and cannot show a reasonable likelihood of confirming a plan within a reasonable time. Its only path—an as-yet unpapered sale—lacks timeline, details, marketing history, potential purchasers, etc. Meanwhile, continuing losses and repeated payment defaults persist. Therefore, section 1112(b)(2) is inapplicable, as no unusual circumstances exist.

### E. Conversion, Not Dismissal, is in the Best Interests of Creditors and the Estate

19. A chapter 7 trustee will halt losses, control Cash Collateral, and run a transparent sale process to maximize value while mitigating the risk of further mismanagement.

20. The Debtor's claim that a trustee sale will "dissipate" equity through fees (Opp. ¶ 33) is speculative and ignores the ongoing erosion of value from continuing losses and

unauthorized spending. Professional costs are outweighed by preserving and realizing value through a proper process. Moreover, counsel to the Debtor and Flushing negotiated a resolution that would obviate the need for a trustee, but the Debtor appears to have rejected those terms.

21. Dismissal would reward the Debtor's continued noncompliance, impair secured creditors' rights, and prevent all creditors from finally being paid upon their claims. Given this the case should be converted so that creditors can get paid.

**WHEREFORE**, Flushing requests that the Court grant the Motion in its entirety and convert the Debtor's case to chapter 7, and grant such other and further relief as may be just and proper under the circumstances.

Dated: Uniondale, New York
October 3, 2025

CULLEN AND DYKMAN LLP

By: */s/ Bonnie L. Pollack*
Bonnie L. Pollack, Esq.
Kyriaki Christodoulou, Esq.
The Omni Building
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
(516) 357-3700
bpollack@cullenllp.com
kchristodoulou@cullenllp.com

*Attorneys for Flushing Bank*